Thomas THACHER, Superintendent of Insurance for the State of New York as Statutory Liquidator of The Preferred Accident Insurance Company of New York, Plaintiff-Appellee,

v.

H. C. BALDWIN AGENCY, INC., Defendant-Appellant.

No. 12962.

United States Court of Appeals Seventh Circuit.

Nov. 10, 1960.

Rehearing Denied Dec. 16, 1960.

Thomas L. Davis, R. Bruce Townsend, Indianapolis, Ind., Robert E. Magley, Indianapolis, Ind., Magley & Davis, Indianapolis, Ind., of counsel, for appellant.

Irvin Waldman, New York City, William H. Vobach, Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

The Preferred Accident Insurance Company of New York, a New York insurance corporation licensed to carry on business in the State of Indiana, was adjudicated insolvent in proceedings instituted by the Superintendent of Insurance in New York, pursuant to the New York Insurance Law. The Supreme Court of New York State entered an order April 30, 1951, dissolving Preferred, placing it in liquidation, and annulling its corporate charter. The New York Court vested title to Preferred's assets in the Superintendent of Insurance of the State of New York, plaintiff herein, as Liquidator and Domiciliary Receiver. The New York Court further directed that notice be given to file claims not later than October 31, 1951; enjoined assertion of claims except in the liquidation proceedings; and enjoined interference with the assets or with the administration of the liquidation.

Preferred had an agency contract with defendant, H. C. Baldwin, Inc., an Indiana corporation and licensed insurance agent. This contract was terminable at will by either party on written notice. The District Court made the following findings with respect to this contract, all of which are well supported by the record:

"4. On November 12, 1947, the Company and defendant entered into a written contract entitled 'Agency Agreement' to take effect the 1st day of January 1948, whereby defendant was appointed agent of the Company and authorized and granted authority to receive and accept proposals for such contracts of insurance covering risks located in Indiana and vicinity as the Company was

authorized lawfully to make. The Agreement, among other things, provided as follows:

"(1) Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent and accepted by the Company and to retain out of premiums collected, as full compensation on business so placed with the Company, commissions at the following rates, viz.: * * *

"It is a condition of this Agreement that the Agent shall refund ratably to the Company, on business heretofore or hereafter written, commissions on cancelled liability and on reduction in premiums at the same rate at which such commissions were originally retained. * *

"(7) This Agreement supersedes all previous agreements, whether oral or written, between the Company and the Agent and may be terminated by either party at any time upon written notice to the other.

"5. On or about January 1, 1948 the Company and the defendant entered into two written instruments, each entitled 'Addendum to Contract,' and a further instrument effective October 1, 1949 making changes in or increasing the commissions of defendant.

"6. On or about the 12th day of November, 1948, the Company and the defendant entered into a 'Contingent Agreement' effective the 1st day of January, 1948, whereby the Company agreed to pay 10 per cent of the net profits on the Company's business with defendant's agency, based on a minimum volume of $50,-000.00 in premiums written per calendar year, the net profits to be calculated for each calendar year according to the following formula and otherwise provided, as follows:

"Credits.

"1. Unearned premiums at beginning of year.

"2. Outstanding losses at beginning of year.

"3. Net premiums written during current year.

"Debits.

"1. Unearned premiums at close of year.

"2. Losses outstanding at close of year.

"3. Losses and Loss Expenses paid during current year.

"4. Commissions and allowances on Credit Item 3.

"5. Twenty per cent of Credit Item 3 for Home Office Expense including Inspections and Taxes, etc.

"6. Net Loss, if any, in previous year and subject to only one calendar year under this contract.

"The excess of credits over debits shall be the net profits on which this contingent is computed.

"The certificate of the Treasurer (or the Secretary) of the Company to be accepted as final and conclusive.

"In the event that this agreement is terminated by either party prior to the completion of a full calendar year, the payment of the contingent shall be subject to the following:

"1. Payment of account in full.

"2. A minimum of $10,000.00 within the calendar year up to date of termination.

"3. No payment of the contingent agreement until all policies have expired.

"7. Prior to March 5, 1951, the Company advised defendant that it intended to cancel the existing agency arrangement and replace it with a new one which would limit the authority of the defendant to the writing of Accident and Health insurance; and thereafter on March 5, 1951, the Company and defendant entered into a written agreement

entitled 'Agency Agreement' which limited and restricted the agency of the defendant to the writing of Accident and Health insurance, and further provided:

"(7) This Agreement supersedes all previous agreements, whether oral or written, between the Company and the Agent, and may be terminated by either party at any time upon written notice to the other.

"8. After the making of the Agency Agreement effective January 1, 1948, defendant, pursuant to said contract and addenda, through its agents, sub-agents, and employees, issued for and on behalf of the said Company policies of insurance and other related contracts written or authorized to be written by the said Company in the normal course of business to various persons, firms, associations and corporations, and delivered such policies to and collected from such persons, firms, associations, and corporations, the premiums in payment for such policies of insurance and other contracts, for transmittal to the said Company.

"9. Defendant from time to time prior to April 30, 1951, settled its accounts with the Company on an accounts current basis, and once or twice a month prepared a statement setting forth the premiums which it was remitting after deducting therefrom the commissions which it was entitled to retain from such premiums, and return premiums remitted to policyholders.

"10. At no time prior to April 30, 1951 in the settlement of its premium accounts with the Company did defendant deduct anything other than the commissions which it was entitled to retain under the Agency Agreement and return premiums which it had remitted to policyholders. * * *

"12. There was no excess of credits over debits for the calendar years 1947, 1948, 1949 and 1950 and no net profits under the 'Contingent Agreement' between the Company and the defendant.

"13. Defendant never made payment of its account in full to the Company or to the plaintiff herein, or any of his predecessors.

"14. Defendant did not write a minimum of $10,000.00 within the calendar year 1951 up to the date of termination of the Agency Agreement.

"15. The Company furnished to the defendant certified statements for the calendar years 1947, 1948, 1949 and 1950 showing losses during the said calendar years on the business written by or through the defendant, which were final and conclusive.

"16. Defendant made no objection to any of such statements in writing although it had ample opportunity to do so, never contended that the formula set forth in such contingent agreement had been incorrectly applied, and went on doing business in the same manner as it had done previously."

Baldwin had failed to transmit to Preferred certain premiums which Baldwin had collected, and also had failed to account for these. Although Baldwin did have knowledge of the order of liquidation, Baldwin refused to pay plaintiff despite demands therefor. Baldwin filed no claims in the liquidation proceedings pending in the Supreme Court of the State of New York, on, before, or after October 31, 1951, the designated deadline for filing claims.

Plaintiff brought action in the U. S. District Court for the Southern District of Indiana, in two counts: (1) for accounting and payment of premiums collected, less Baldwin's commissions, as set out in the contract; and (2) for return of pro rata commissions on policies cancelled by the order of liquidation dated April 30, 1951; plus interest from that date. Baldwin interposed a defense to the second count only, that insolvency constituted a breach of contract and barred recovery. Baldwin also pleaded vari-

ous set-offs and counterclaims. The District Court took evidence of these over objection of plaintiff, and, after all proof was in, dismissed them on the merits. The District Court later concluded, in the light of additional research, that the order of the New York Court staying the assertion of claims against the Liquidator, except in the liquidation proceedings, stayed adjudication of Baldwin's counterclaims and set-offs, except to the extent of determining the amount of commissions which Baldwin was entitled to deduct from premiums collected prior to April 30, 1951.

The amount of these premiums (less commissions) was agreed upon between the parties at the time of the trial, and the plaintiff's complaint was amended to demand judgment in the agreed sum of $18,327.71. This amount is not in issue. The amount of the ratable commissions sought in count 2 on that portion of the premiums representing cancelled liability on policies, was proven without contradiction, it being Baldwin's position that Baldwin was not liable for this sum as a matter of law. This sum was found to be $2,873.07.

■ The District Court held that Preferred's insolvency and the order of liquidation, entered pursuant to the New York insurance law, did not constitute a breach of the agency contract. We agree. When the New York Court assumed jurisdiction of the assets of Preferred and appointed the Liquidator, that amounted to a termination of the agency contract by operation of law, reasonably within contemplation of the parties, and did not constitute a breach of the contract by Preferred. Layton v. Illinois Life Ins. Co., 7 Cir., 1936, 81 F.2d 600, 602, certiorari denied sub. nom. Bachman v. Davis, 298 U.S. 681, 56 S.Ct. 949, 80 L.Ed. 1401.

■ The District Court also granted interest from April 30, 1951, on the agreed sum of $18,327.71 due under count 1 for collected premiums, and the sum of $2,873.07 found due under count 2 for returned commissions.

Baldwin contends that allowance of interest was an abuse of discretion because the amount was uncertain, and resort to litigation was necessary to settle the account; that defendant, without cooperation from plaintiff, made efforts to settle the amount; that if defendant had given up the fund claimed by plaintiff, and interposed its set-off claims in the New York liquidation, defendant would have suffered burdens in loss of time and expense; and that plaintiff did not begin this suit until defendant could no longer file claims in the New York liquidation proceeding. There is no showing of any reason why defendant allowed the time for filing its claims to elapse without filing such claims.

Study of the record indicates that there was no real dispute as to the amount of the premiums collected, less commissions and returned premiums. Defendant's own books would disclose the precise amounts. The attempts at settlement consisted largely of sending checks, to be accepted in full payment, from which defendant had deducted various sums for items other than commissions and returned premiums. These items generally speaking were similar to those set out in defendant's counterclaims and set-offs.

Burns' Indiana Statutes Annotated, 1950 Replacement, § 19–2003, provides for interest at the rate of 6 per cent on money had and received for the use of another and retained without his consent. We find no abuse of discretion in allowance of interest by the District Court.

■ Baldwin, in arguing that it is entitled to adjudication of its counterclaims and set-offs in the Indiana District Court, relies on Robertson v. Malone, 5 Cir., 1951, 190 F.2d 756, 759, the sole pertinent case which has come to either party's attention. The District Court initially relied on this case when he admitted proof of the counterclaims and set-offs over objection of plaintiff. Ultimately, however, the District Judge concluded that Malone was distinguished from the case at hand. In Malone, un-

862

like this case, there had been no showing of an order staying assertion of claims against the liquidator except in the liquidation proceedings. In Malone, the Court had said:

"The statutory liquidator, representing the estate against which the defendant must assert his claim, was before the Court. Jurisdiction was present both as to citizenship and the amount in controversy and the defendant was entitled to maintain his counterclaim, at least in the absence of a showing of any proceeding or order staying the assertion of claims against the liquidator except in the liquidation proceedings. This might constitute a bar. * * * In the present state of the pleadings and proof he was entitled to the judgment of the Court upon the merits in order to so liquidate his claim. The Court could have made clear that the rank and lien of any amount as thus liquidated would be left for determination in the liquidating proceedings. * * *"

Baldwin argues that this Court, as a matter of policy, ought to hold that claimants in defendant's position are entitled to adjudicate their claims in the District Courts of their own states to avoid expenditure of time and money in journeying to New York to file their claims. There is no explanation of defendant's failure to submit its claims by mail.

In its brief, defendant sets out Indiana statutes which provide that the Indiana Insurance Department may seek ancillary receivership for foreign insolvent insurance companies. However, there is nothing in the record to show that the Indiana Insurance Commissioner ever sought such ancillary receivership in this case. His inaction would suggest that he feared no unfairness to Indiana claimants, or hardship in their filing claims, in the New York liquidation proceedings.

We have weighed all other arguments presented by the defendant and find them of no merit.

The judgment of the District Court is affirmed.