Jack L. CLAY, Superintendent, Division of Insurance, Department of Business and Administration of the state of Missouri, Plaintiff-Respondent,

v.

INDEPENDENCE MUTUAL INSURANCE COMPANY, a Corporation, Defendant;

In the Matter of Jack J. WILLE and Priscilla F. Jennings, Doing Business as Time Insurance Agency, Defendants-Appellants.

No. 49012.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

As Modified Sept. 10, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1962.

James & Hasler and John D. Hasler, St. Louis, for appellants.

Bond & Dominique, John O. Bond, P. Pierre Dominique, Jefferson City, for plaintiff-respondent.

HOUSER, Commissioner.

Proceeding by the superintendent of insurance against Jack J. Wille and Priscilla F. Jennings, partners doing business as

Time Insurance Agency (hereinafter "Time"), to recover premiums and unearned commissions claimed due the superintendent as receiver of Independence Mutual Insurance Company, a corporation (hereinafter "Independence"), on policies written by Time in Independence prior to the receivership, and to recover attorney's fees. From a judgment for the superintendent for $7,520.77 the partners in Time have appealed. We have jurisdiction because a state officer as such is a party.

On May 11, 1959 the superintendent of insurance, acting under § 375.560,[1] sought and procured an order of the circuit court authorizing him to take charge of the property, assets, records, books and papers of Independence, and to receive its premiums and other income until final decree; temporarily enjoining Independence from further transaction of business, and ordering it and its officers, employees and agents immediately to turn over to the superintendent all of its property, assets, etc., in or under its or their possession or control. The basis of the action was that the surplus funds of Independence were exhausted and impaired; that the company was insolvent and in such a condition that its further transaction of business would be hazardous to policyholders, creditors and the public.

Time represented Independence under a written agency agreement dated October 16, 1958. Time was given power to bind the company for various kinds of insurance and was bound to forward monthly reports of all premiums on business becoming effective prior to the last day of the preceding month and to pay the balance shown therein, whether collected or not, not later than 45 days after the end of the accounting month. Out of premiums collected Time was to retain certain commissions. By Paragraph 4 Time agreed that all premiums it received on business of the company should be held by Time "as a Trustee of the company until delivered to the company." Time was to "refund ratably to the Company

commissions on cancelled policies * * * at the same rate at which such commissions were originally retained." Time agreed "to start cancellation proceedings immediately upon instructions from the Company," and that "any business written [t]hereunder [might] be cancelled by the Company." In May, 1959 Time had on its books four or five hundred policies written for its insureds in Independence. On May 11, 1959 Time cancelled two policies by previous orders of Independence. On May 12 Time had on hand and in its possession $3,300 or $3,400 of premiums collected from insureds in Independence. On every policy issued Time had collected some money but not all premiums had then been paid in full on all policies issued. Time had not remitted these premiums, less commissions, to Independence. They were not all due as of May 12, because of the 45- to 60-day time lapse between the date a policy was written and the date the charge therefor appeared on the monthly report. On May 12 Wille and Jennings had no actual knowledge of the action of the circuit court the previous day. On May 12 the partners in Time determined to cancel every policy written by Time in Independence, because they were dissatisfied with the claims service, accounting procedures and underwriting of Independence. Time had not been requested by Independence to so cancel. On that date Jennings started a cancellation program by having an office girl start "pulling files" on policies in force in Independence, and by sending out notices of cancellation of 56 policies (12 or 15% of the total number of Independence policies on the books of Time). While some of Time's insureds asked Time to cancel their policies with Independence "it would be safe to say that most" of the 56 insureds whose policies were attempted to be cancelled on May 12 had not asked Time to cancel and that "in most instances" Time cancelled on its own accord. The first notice of any proceedings against Independence received by the partners of Time was a newspaper article printed May 13. Upon

---

1. All section references are to RSMo 1949, V.A.M.S.

reading the article Time ceased cancellation of policies. Time took the premiums on hand and used them to acquire insurance for the same 56 insureds for the remainder of the terms of the policies, in a different company represented by Time (Guaranty Insurance Exchange, hereinafter "Guaranty"). Time paid the premiums on the substituted policies with the money previously collected from the same insureds and not yet transmitted to Independence. The replacement policies in Guaranty were written (typed) May 14 or 15, 1959, effective May 20. The premiums on these new policies were paid by Time to Guaranty in July. The partners in Time considered the $3,300 or $3,400 on hand not due Independence; that they were holding it for payment of Time's account with Guaranty; that the only amount they owed Independence was the amount of the premiums less the credit due for cancellations ($207.25). It was Wille's practice, when it was known that insureds were "unhappy" in Independence and the insured would qualify for admittance in another company, to "cancel them out of one and put them into another." He considered this "the agent's prerogative" and that "by virtue of the cancellations and rewriting into Guaranty, the funds no longer then were held in trust for Independence, but then became the funds held in trust for Guaranty," for the payment of Time's account with Guaranty.

On June 2, 1959, following a hearing, the circuit court entered its order, judgment and decree continuing and making permanent its order of May 11; permanently enjoining Independence from further transaction of business and permanently dissolving Independence on that date; vesting title in fee simple absolute in the superintendent to all property, assets, evidences of debt, records, books and papers of Independence for the use and benefit of creditors, policyholders and stockholders and others interested in the assets; terminating and cancelling all policies of insurance issued by Independence and directing that its business and affairs be liquidated, settled and wound up pursuant to court order under the statutes.

By letter dated October 9, 1959 the superintendent demanded payment by Time of the sum of $3,329.33 representing premiums collected by Time on policies written in Independence, but not remitted. Time's answer was that the net balance due the company was $207.25, calculated as follows: $3,494.57, the balance due May 5, less credit claimed due Time for April and May items of $3,287.32 [the cancellations]. Time's letter further stated that Time had uncollected premiums on policies in the course of financing in the sum of $232.55.

On February 26, 1960 the superintendent, as receiver for Independence, not satisfied with this explanation, filed the instant proceedings by motion in the case against Independence, naming Wille and Jennings as defendants, asking the court to order defendants to pay the receiver $3,329.33 for premiums collected but not remitted, plus interest, and $750 attorney's fees, alleging that under the agency agreement $3,329.33 of premiums collected from insureds of Independence were the property of Independence and its receiver, held by Wille and Jennings in a fiduciary capacity as trustees for Indpendence, for which they were accountable to the receiver. Defendants Wille and Jennings answered, denying any liability, pleading lack of notice of the proceedings in circuit court, failure to make them parties thereto and consequent lack of jurisdiction over defendants, the right of defendants to cancel policies written by them, and that the policies were cancelled before they had knowledge of the institution of the proceedings in circuit court.

The superintendent filed an amended motion in two counts, repleading the previous motion as Count I, adding Count II praying for an order on defendants to pay the receiver $3,370.66 unearned commissions which the receiver claimed defendants were obliged to refund by reason of the cancel-

lation of the policies ordered by the court June 2, 1959, and increasing the claim for attorney's fees to $1,000.

Trial without a jury in circuit court resulted in a judgment and decree for the superintendent for $3,397.98 on the account, including interest, $3,122.79 for unearned commissions, and $1,000 expenses and attorney's fees, in the aggregate sum of $7,520.77. This appeal followed the overruling of Time's motion for new trial.

■ The first issue raised on this appeal is whether the receiver is entitled to recover from the insurance agency *unearned premiums* shown by the monthly reports to be owing but not remitted to the insurance company, on the 56 cancelled policies. By contract [2] Time was obligated to pay Independence the balance shown on monthly reports. Both by contract [3] and by statute [4] a trust or fiduciary relationship existed between Time and Independence as to all premiums received by Time on business of Independence. As a trustee it was Time's duty, without alternative or option, to pay the balances shown at the specified times, Trice v. Lancaster, Mo.App., 270 S.W.2d 519, 525, 526, and the use of the trust funds in Time's possession to purchase other insurance for Time's policyholders was a gratuitous and voluntary act on the part of Time, not binding upon the receiver.

Time's excuse for noncompliance with this duty (that acting within its authority, Time cancelled these policies in the ordinary course of business and transferred the risks to another company) is no excuse in law, and the circuit court properly ruled that Time is liable to the receiver for the unearned premiums.

■ Even in the case of a going concern an insurance agent has no power to cancel policies on his own initiative and transfer the risk to another company by substituting the latter's policy for the subsisting policy, in the absence of consent of the insured, Wilson v. National Ben Franklin Fire Ins. Co., Mo.App., 266 S.W. 338; Dowell v. Commonwealth Ins. Co., 215 Mo. App. 600, 256 S.W. 1074; Anno., 83 A.L.R. 298, 300, special authority, waiver or ratification (no certain and substantial evidence of which was shown). 45 C.J.S. Insurance, § 444 d.; 83 A.L.R. 300. Time's purported cancellations in mass on May 12 and its transfer of the risks to Guaranty were in excess of its authority as agent of the company, and wrongful, not having been done at the request of the insureds, or at the request of Independence, but to serve the personal interests of the partners in Time in preserving the good will of their policyholders. German-American Ins. Co. of New York v. Tribble & Pratt, 86 Mo. App. 546, 554, 555. In this case the effort of Time to effect a mass cancellation was done after entry of a court judgment placing the superintendent of insurance in charge of the property, etc. of Independence as receiver and enjoining it from the further transaction of business, the effect of

---

2. Agency Agreement, par. 3: "The Agent shall forward to the Company on or before the ——— day of each month an accurate report of all premiums on business becoming effective prior to the last day of the preceding month and not previously reported. The Agent agrees to pay the balance shown therein, whether collected or not, not later than 45 days after the end of the month for which the account is rendered."

3. Agency agreement, par. 4: "The Agent agrees that all premiums received by the Agent on business of the Company are the property of the Company and shall be held by him as a trustee for the Compa-

ny until delivered to the Company. The privilege of retaining commissions from the premiums received by the Agent shall not be construed as changing the relationship of the respective parties hereto."

4. Section 375.290: "Any person who shall * * * act as agent for any insurance company * * * who shall receive or collect moneys * * * on any account whatsoever, as such agent, for any insurance company * * * shall be held responsible in a trust or fiduciary capacity to such company for any money so collected or received by him for such company."

which was an adjudication of insolvency by which the rights of the receiver became fixed, Wheeler v. Clark, Tex.Civ.App., 306 S.W.2d 158; Commonwealth ex rel. Todd v. Guardian Fire Ins. Co. of Pennsylvania, 65 Pa.Super. 203, 208; the corporate property, including the premiums on the books of Time, became bound by the injunction, regardless of the knowledge of the partners in Time, O'Neil v. Burnett, 263 Pa. 216, 106 A. 246; no business could be transacted with Independence; Time's agency agreement was terminated, 44 C.J.S. Insurance, § 133b(3); the rights of creditors in insolvent concerns attached, Commonwealth ex rel. Todd v. Guardian Fire Ins. Co., supra, and the receiver succeeded to the right of Independence to payment of the unremitted unearned premiums. Following this adjudication policyholders who had paid premiums for a term extending beyond May 11, the date of the judgment of insolvency, and June 2, the date of the judgment of dissolution, could not cancel under the provisions of their policies and thereby become entitled to refund in full of unearned premiums because this would involve the prohibited transaction of business with Independence and give them a preference. Thereafter the policyholders, as creditors of the company, had claims against the receiver for their unearned premiums. Green v. American Life & Accident Ins. Co., Mo. App., 112 S.W.2d 924 [4]. To permit Time to use the unearned premiums in its hands to purchase other insurance for these policyholders would result in refunds in full to the policyholders, thus creating a preference over other insureds and creditors. Langdeau v. Bouknight, Tex.Sup., 344 S. W.2d 435; Bohlinger v. Mayville Realty Co., Sup., 135 N.Y.S.2d 865, affirmed App. Div., 141 N.Y.S.2d 509; Eng v. Wheeler, Tex.Civ.App., 302 S.W.2d 263; Bohlinger v. Ward & Co., 20 N.J. 331, 120 A.2d 1;

Maloney v. Rhode Island Ins. Co., 115 Cal.App.2d 238, 251 P.2d 1027; Commonwealth ex rel. Todd v. Guardian Fire Insurance Co., supra. What the policyholders could not do for themselves on May 12 Time could not do for them, even if Time had their consent.

■ The second question is whether the receiver is entitled to recover from Time *commissions* on premiums unearned because of the June 2 court order cancelling all Independence policies. By a plain and unambiguous provision of the agency agreement [5] it was the obligation of Time to ratably refund commissions on cancelled policies. When the receiver was appointed and all policies of Independence were cancelled by the Circuit Court of Cole County Time was duty bound under its contract to ratably refund to the receiver the commissions it had retained on all policies of Independence it had written but for which it had not previously accounted to Independence. Langdeau v. Bouknight, supra; Eng v. Wheeler, supra; Wheeler v. Clark, Tex.Civ.App., 306 S.W.2d 158, 159. What the court of appeals said in Wheeler v. Clark, supra, 306 S.W.2d loc. cit. 160, is appropriate here: "When a Receiver was appointed and the policies were cancelled, the liability of the parties was then and there fixed. The Receiver owed the duty to pay to the policyholders the unearned premiums and [the agent] was obligated to pay the Receiver his unearned commissions, which he had theretofore retained. He could not change the situation by going out and voluntarily paying to the policyholders the unearned premiums."

■ The third issue involves the propriety of awarding an attorney's fee in favor of the superintendent against Wille and Jennings. From the recitals in the judgment we believe the court proceeded on the the-

---

5. "The Agent may retain, out of premiums collected, as full compensation on business placed with the Company, commissions as set forth in the Schedule. He shall refund ratably to the Company commissions on cancelled policies or refunded premiums at the same rate at which such commissions were originally retained."

ory that it had power to assess an attorney's fee against these private litigants because they knowingly and intentionally retained and converted to their use trust funds which they wrongfully refused to deliver to the receiver, whereby the receiver was put to trouble, expense and attorney's fees, but the court had no power to assess attorney's fees in favor of the superintendent on this basis. The employment and compensation of counsel by the superintendent of insurance is regulated by statute, which provides an exclusive method of defraying the expenses of enforcing the insurance laws. Ordinarily fees of counsel employed by the superintendent to assist in the enforcement of the insurance laws are required to be paid in the same manner as other departmental expenses, namely, out of appropriations or by assessment against the company, but in proceedings to enjoin, rehabilitate, dissolve, wind up or otherwise dispose of the assets of insurance companies § 375.740 provides that the superintendent "shall have power and authority * * * through the course of the whole case, to employ the necessary legal counsel * * subject to the approval of the court as to the amount of compensation to be paid them, and the expenses of such employment, together with all necessary expenses in the settlement of the business of the company, or the collection, disposition or distribution of its assets shall be taxed as costs, and paid by the superintendent out of the assets of such company; or, in case it is reinsured, by the reinsuring company, or, if the company proceeded against has no assets, then as by law in such cases provided, * * *." Leggett v. Missouri State Life Ins. Co., Mo.Sup., 342 S.W.2d 833, 934.

Accordingly, the judgment is reversed and remanded with instructions to enter a new judgment and decree as of June 1, 1961, in words and figures the same as the original judgment and decree of that date, excepting the provision as to attorney's fees, which shall be so amended as to exclude recovery of an attorney's fee against the partners in Time, and shall assess the attorney's fee as provided by law.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.