Philip O'CONNOR, Director of Insurance for the State of Illinois as Liquidator of Reserve Insurance Company, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.

No. 81 C 4690.

United States District Court, N.D. Illinois, E.D.

Oct. 21, 1985.

---

Ronald A. Jacks, David M. Spector, Loraine P. Eber, Isham, Lincoln & Beale, Chicago, Ill., for Bind Inc., Dominion Ins. Co. of America, Employers Reinsurance Corp., Excess & Cas. Reinsurance Ass'n, Gerling Global Reinsurance Corp. (U.S. Branch), Hamburg Intern. Reinsurance Co., Ins. Co. of North America, INA Underwriters Ins. Co., Lumbermens Mut. Ins. Co., Monarch Ins. Co. of Ohio, Montgomery and Collins, Inc. of Texas, Petroleum Ins. Inc., Puritan Ins. Co., Rochdale Ins. Co., Scor Reinsurance Co., Societe Commerciale de Reassurance.

Peter M. Sfikas, Clay H. Philips, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for New England Reinsurance Corp., Prudential Reinsurance Co., Munich American Reinsurance Co., Munich Reinsurance Co. (U.S. Branch).

Arent J. Jacobson, Chicago, Ill., for Cent. Nat. Ins. Co. of Omaha.

William H. Luking, Ross & Hardies, Chicago, Ill., for American Reserve Ins. Brokers/International, Inc.

Jesse R. Pierce, Porter & Clements, Houston, Tex., David O. Toolan, Jeremiah Marsh, Michael Schneiderman, John L. Rogers, III, John N. Gavin, Rebecca R. Pallmeyer, Hopkins & Sutter, Chicago, Ill., for James A. Schacht, Acting Director of Ins.

Erwin I. Katz, Alvin L. Kruse, Hoffman & Davis, P.C., Chicago, Ill., for Independent Refining Corp.

Alan John Rein, Rein, Mound & Cotton, New York City, for Gerling Global Reinsurance Corp. (U.S. Branch), Hamburg Intern. Reinsurance Co., Monarch Ins. Co. of Ohio, Puritan Ins. Co., Rochdale Ins. Co.

John W. Dondanville, Evan B. Karnes, II, Baker & McKenzie, Chicago, Ill., for General Reinsurance Corp., North American Reinsurance Corp.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff, Philip R. O'Connor (the "Liquidator"), brings this diversity action on behalf of Reserve Insurance Company ("Reserve"). Reserve has been found insolvent, pursuant to the provisions of the Illinois Insurance Code ("Insurance Code") and the Final Order of Liquidation entered by the Circuit Court of Cook County in *People ex rel. Mathias v. Reserve Insurance Co.*, 79 Ch 2828. Defendants include twenty-six insurance companies which acted as reinsurers of Reserve's liability under various reinsurance contracts (sometimes referred to as the "Reinsurers"); American Reserve Insurance Brokers International, Inc. ("ARIB"), which served as the manager under the contracts prior to Reserve's liquidation and shortly thereafter; Montgomery and Collins, Inc. of Texas ("Montgomery"), which purchased ARIB's rights as manager of the contracts after entry of Reserve's order of liquidation; and Petroleum Insurance, Inc. ("Petroleum"), an affiliate of Montgomery, which obtained from Montgomery the right to serve as manager under the contracts.

Presently before the court are the parties' cross-motions for partial summary judgment. For purposes of their motions, all Defendants have adopted, pursuant to the court's request, the argument set forth in the memorandum and the statement of facts and exhibits filed by the Insurance Company of North America, and certain other Defendants.

The court will grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). For the reasons stated below, Defendants' motions for partial summary judgment are granted, and, accordingly, the Liquidator's cross-motion is denied.

### Factual Background

The relevant facts as we understand them, although complex, do not appear to be in dispute. On May 29, 1979, an order of liquidation was entered by the Circuit Court of Cook County, naming the Director of Insurance of the State of Illinois the Liquidator of Reserve. The Liquidator has title to Reserve's property and is authorized to deal with the property and business of the company.

For several years prior to the entry of the liquidation order, Reserve was a party to several reinsurance contracts which shared insured property risks in the petroleum and petrochemical industries. In June 1975, Reserve entered into a "Quota Share Contract of Reinsurance" (the "3100 Treaty") with certain reinsurers whereby a portion of the risk on petroleum and petrochemical insurance policies written by Reserve would be carried by the reinsurers. In July 1976, Reserve entered into a "First Surplus Reinsurance Agreement" (the "3200 Treaty") which established a reinsurance arrangement for risks written above a

certain dollar amount under the 3100 Treaty. ARIB acted as the manager under both the 3100 and the 3200 treaties.

Effective January 1, 1979, the 3100 and 3200 reinsurance contracts were replaced by a new contract of reinsurance between various reinsurers, with ARIB as the manager (the "3400 pool"). Reserve was a party to the 3400 pool both as a reinsurer of risks undertaken by other insurance companies and as a reinsured on its own risks. By an agreement dated June 25, 1979, Montgomery purchased ARIB's interest as manager under the reinsurance contracts, and thereafter Petroleum became the new manager under the agreements. (The Liquidator refers to the three companies collectively as the "Manager").

While a participant in the reinsurance pool, Reserve wrote many insurance policies covering property risks in the petroleum and petrochemical industries and ceded to the reinsurers under the 3100, 3200, and 3400 treaties their share of the risk insured by such policies. Reserve also accepted reinsurance risks on policies written by other insurance companies which were members of the pool. The reinsurance pool was governed by a written contract and operated as follows. ARIB collected the insurance premium from the policyholder. ARIB then used approximately 30% of the premium to pay commissions to the producing agent or broker and the ceding company. ARIB retained the remaining 70% which was credited to the ceding company and the reinsurers in proportion to their assumption of the risk. As losses were incurred, ARIB paid the loss payments to claimants out of those retained funds.

Each quarter ARIB provided the reinsurers with an accounting of net written premiums, losses, loss adjustment expenses, salvage, etc. If the net written premiums plus salvage recovered exceeded losses and expenses, ARIB paid out the net amount to the pool participants. If losses and expenses exceeded the net written premiums and salvage recoveries, the participants paid the difference to ARIB as manager. Defendants claim, and the Liquidator does not dispute, that from January 1, 1979 to the date of Reserve's insolvency the losses exceeded the net premiums in the pool and Reserve failed to make the necessary payments during that period.

Sometime after January 1, 1979, ARIB ceased issuing Reserve policies. The Liquidator contends that in April and May 1979, ARIB cancelled a large number of Reserve's policies because ARIB was concerned about Reserve's failing financial condition. During that time, ARIB issued new policies in the name of one of the other ceding companies. The Liquidator asserts that this cancellation and rewriting of policies, prior to Reserve's insolvency, was unauthorized and unlawful.

On the basis of the foregoing facts, the Liquidator alleges that he is entitled to recover, among other things, (1) certain reinsurance proceeds for losses incurred by Reserve's policyholders prior to liquidation but not paid as of the date of the liquidation order (Count I); (2) certain monies which the reinsurers and the manager owe Reserve for claims of policyholders which ARIB paid with Reserve's funds prior to liquidation (Count II); (3) Reserve's proportionate share of premiums written (less losses and other expenses) which Reserve earned under the 3400 reinsurance agreement (Count III); (4) the unearned premiums which the Manager or the reinsurers are holding and which relate to Reserve policies which were cancelled on May 30, 1979 as a result of Reserve's insolvency (Count IV); (5) the unearned premiums on Reserve policies to which the Liquidator would have been entitled had the Manager not cancelled such polices during the months prior to the liquidation order (Count V); and (6) the unearned commissions on policies cancelled by the liquidation order and cancelled by ARIB, allegedly without authority, during the months prior to the liquidation order (Count VI).

Defendants' motions for partial summary judgment request, pursuant to Fed.R.Civ.P. Rules 12(b)(6) and 56: (1) a declaration that the amounts, if any, that the Liquidator may ultimately be entitled to receive under

Counts I–IV are to be reduced by the debts of Reserve to the Reinsurers and other Defendants, to the extent the amount of those debts may ultimately be proven;[1] and (2) an order dismissing Count V of the complaint (and Count VI to the extent it seeks unearned ceding commissions on insurance policies claimed to have been wrongfully cancelled pursuant to the theory of Count V) for failure to state a claim upon which relief can be granted.

The Liquidator's cross-motion moves the court, pursuant to Fed.R.Civ.P. Rule 56, for partial summary judgment: (1) adjudging and declaring that the amounts the Liquidator is entitled to recover from Defendants may not be reduced by Reserve's debts, or, in the alternative, adjudging and declaring that the amounts the Liquidator is entitled to recover under Counts I, IV, V, VI, and VIII of the complaint may not be reduced by Reserve's debts; (2) adjudging and declaring that Defendants' "mass cancellations" of Reserve policies prior to May 29, 1979 were unauthorized and wrongful or resulted in a voidable preference; and (3) adjudging and declaring that the Liquidator is entitled to recover from Defendants under Counts V and VI of the complaint. We address each of the issues in turn.

**1.** These debts are described in paragraphs 3(a)–(f) and (h) of the affirmative defenses set forth in Defendants' Answer.

**2.** Defendants contend that this court should allow a reduction of their amounts owed under the common law doctrine of recoupment. However, the Illinois Insurance Code provides a comprehensive scheme by which insurance companies are to be liquidated, and no provision in the Insurance Code permits a reduction in debt under the recoupment doctrine. Indeed, the careful limitations set forth in the statute would be completely subsumed by the more expansive reach of the recoupment doctrine. While the concept of recoupment makes sense in the context of ordinary contract disputes, it is not applicable in the context of an insolvency, where we must consider the concerns of persons who are not necessarily parties to a contract, but who nonetheless also have claims against assets of the insolvent's estate. We therefore decline Defendants' invitation to base our decision on common law principles and instead rely on the statutory set-off provi-

## I. Set-Offs

Defendants contend that they are entitled to reduce the amount of any debt they may owe the Liquidator by debts Reserve owes to Defendants under the reinsurance agreements.[2] The Liquidator opposes Defendant's motions, arguing (1) that Defendants may not assert their set-off claim in this forum, but only in the liquidation court pursuant to provisions of the Insurance Code and the liquidation order, and (2) that even if Defendants' set-off claims may be considered by this court, certain of those claims do not meet the requirements set out in the statute. *See* Ill.Rev.Stat. ch. 73, § 818 (1983).

### 1. The jurisdiction issue

The heart of the Liquidator's argument is that the Insurance Code provides an exclusive procedure for the filing and determination of claims against an insolvent insurer, and that this procedure encompasses the assertion of set-offs. Furthermore, it is the Liquidator's position that the injunctions contained in the liquidation order pursuant to Ill.Rev.Stat. ch. 73, § 801 (1983) present a bar to Defendants' set-offs in this forum.[3] Thus, the Liquidator argues, De-

sion of the Insurance Code, Ill.Rev.Stat. ch. 73, § 818 (1983).

**3.** The applicable provisions of the liquidation order provide as follows:

G. That ... all ... persons be and are hereby enjoined and restrained from bringing or further prosecuting any action at law or in equity or other proceeding against said RESERVE INSURANCE COMPANY or the Director of Insurance of the State of Illinois, or from interfering in any way with the Director's conduct of the business of RESERVE INSURANCE COMPANY, or from obtaining preferences, judgments, attachments, or liens in the making of any levy against said Company or its property and assets while in possession and control of the Director, or from in any way interfering with the Director of Insurance in his possession or control of or in his title, right and interest to the property, books, records and all other assets of the said RESERVE INSURANCE COMPANY.

H. That all persons be and are hereby enjoined and restrained from asserting any

fendants' set-offs must be brought in the liquidation proceedings. Defendants argue that the Insurance Code's provision regarding set-offs mandates that they be entitled to assert set-offs in this proceeding.

To resolve the issue we must examine Ill.Rev.Stat. ch. 73, § 818 (1983) which provides, in relevant part:

In all cases of mutual debts or mutual credits between the company and another person, such credits and debts shall be set off or counterclaimed and the balance only shall be allowed or paid. ...

██ Although the statutory language appears to be mandatory, it has been held that the right of set-off is permissive, not mandatory, and that its application lies within the discretion of the trial court, which exercises such discretion under the general principles of equity. *See* 4 *Collier On Bankruptcy* ¶ 68.02[1] (14th ed.1978).[4] Even if the statute is not mandatory, however, there can be little question that Defendants are entitled to assert their set-off claims in this proceeding. It is true, as the Liquidator urges, that the liquidation order in sweeping terms bars the assertion of "claims" against the Liquidator or Reserve, except in the liquidation proceedings; however, the Liquidator's argument that the term "claim" in that order is broad enough to encompass set-offs is unavailing. Such an interpretation of the liquidation court's order would mean that the set-off provision

under Illinois law had been effectively overridden by the liquidation order.

The distinction between a "claim" and a "set-off" was clearly described by the court in *Schenck v. Coordinated Coverage Corp.*, 50 A.D.2d 50, 376 N.Y.S.2d 131 (1975), in which the court interpreted the New York Insurance Code's set-off section. That section, unlike the current Illinois Section, did not expressly permit the assertion of counterclaims.[5] The plaintiff, as liquidator of a New York insurance company, brought an action against one of the company's agents to recover $1,400,000 allegedly representing certain commissions improperly paid to the agent. The agent denied that the monies were improperly paid as they did not represent commissions but were, rather, expenses to which it was entitled under the parties' agreement. The agent claimed it not only had a right to retain the $1,400,000, but also claimed that its total expenses and fees amounted to $1,654,274. Therefore, the agent asserted a counterclaim for the difference of $254,-274. 376 N.Y.S.2d at 132. The plaintiff moved to dismiss the counterclaim, urging that a stay contained in the liquidation order barred the agent from asserting the counterclaim. The trial court concluded that the counterclaim was not barred and denied the motion to dismiss. *See id.* 376 N.Y.S.2d at 132–33.

The Court of Appeals reversed. Distinguishing between the assertion of a set-off

---

claim against the Liquidator or RESERVE INSURANCE COMPANY except insofar as such claims arise in the liquidation proceedings of RESERVE INSURANCE COMPANY. I. That all persons, including policyholders of RESERVE INSURANCE COMPANY and all persons asserting claims against such policyholders, be and are hereby enjoined from instituting or pursuing any action or proceeding in any court ... which seeks in any way, directly or indirectly to contest or interfere with the Liquidator's exclusive right, title and interest to funds, recoverable under treaties and agreements of reinsurance heretofore entered into by RESERVE INSURANCE COMPANY as the ceding insurer, or otherwise.

4. The scope of the liquidation court's jurisdiction under the Insurance Code is similar to that granted the bankruptcy courts under the former

Bankruptcy Act. *See People ex rel. Gerber v. Central Casualty Co.*, 37 Ill.2d 392, 397, 226 N.E.2d 862 (1967). Accordingly, we refer to bankruptcy cases interpreting the former Act. Similarly, we refer to Collier's 14th edition, which analyzes the former Act, rather than the more recent 15th edition, which analyzes the new Bankruptcy Code.

5. The applicable New York Code Section provides, in part:

1. In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article, such credits and debts shall be set off and the balance only shall be allowed or paid. ...

*See Schenck,* 376 N.Y.S.2d at 134.

and that of a counterclaim, the court stated:

A counterclaim "is broader and more comprehensive than, recoupment and set-off. ..." While a defendant who has asserted a counterclaim is entitled to an affirmative judgment, in the absence of a statute so providing "a defendant who has pleaded set-off is not entitled to recover the excess of his claim over the plaintiff's demand."

*Id.* 376 N.Y.S.2d at 134 (citations omitted). Specifically rejecting the trial court's determination that the counterclaim came within the New York Insurance Code's provision permitting offsets against a liquidator, the court concluded that the section:

permits only the assertion of a set-off and not a counterclaim. ... [D]efendant seeks to obtain affirmative relief—by way of a money judgment—beyond that which can be obtained through the assertion of a set-off. ... However, both the statute and the cases indicate that where affirmative relief is sought—*beyond a mere set-off up to the amount claimed by the liquidator*—such relief is barred by the injunctive provision in a liquidation order and the action or counterclaim seeking the affirmative relief must be dismissed, the claimant being relegated to filing a claim in the liquidation proceeding.... The relief sought herein is clearly in the nature of a counterclaim and may not be asserted pursuant to Insurance Law § 538 but is rather, barred by the aforementioned injunction.

*Id.* 376 N.Y.S.2d at 133, 134 (emphasis added).

Defendants do not seek affirmative relief in this proceeding against assets held by the liquidation court, even though they claim that the set-offs asserted in this proceeding may exceed the amounts owed to the Liquidator, and even though the language of the Illinois statute expressly permitting "counterclaims" might be construed to permit the assertion of claims for

affirmative relief.[6] Defendants concede that they must file with the liquidation court their affirmative claims for amounts exceeding that which the Liquidator seeks in this action. All Defendants attempt to do in this action is to show that the Liquidator has no claim or a lesser claim against them. The plain language of the statute gives Defendants that right.

The *Schenck* court's interpretation of the set-off provision is supported by courts and commentators. *Cf. Baker v. Gold Seal Liquors*, 417 U.S. 467, 470 n. 2, 94 S.Ct. 2504, 2506 n. 2, 41 L.Ed.2d 243 (1974) ("If the trustee in ordinary bankruptcy [as opposed to reorganization bankruptcy] goes into a court that has jurisdiction and asserts a claim, the debtor of the bankrupt may raise as a setoff any claim he has against the bankrupt and the court ordinarily issues only one judgment for the difference"); 4 *Collier On Bankruptcy* ¶ 68.05[2] (14th ed. 1978) ("[a] debtor of the bankruptcy estate who also has a claim against the estate may, if he chooses, assert the claim as a set-off in the forum in which his obligation to the estate is to be enforced").

The Liquidator cites to *Thacher v. H.C. Baldwin Agency, Inc.*, 283 F.2d 857 (7th Cir.1960) as support for his position that set-offs may be asserted only in the liquidation proceeding. The Seventh Circuit affirmed, without much discussion, the decision of the district court judge to refuse to permit the defendant to assert his set-offs and counterclaims against the liquidator of an insolvent New York insurance company. The court construed the district court's reasoning as being that the liquidation order barred the assertion of claims against the liquidator except in the liquidation proceedings; 283 F.2d at 862. On its face, therefore, the Seventh Circuit's opinion appears to conflict with our holding today. In fact, however, the trial judge refused to allow the set-offs, not because of an injunction in the liquidation order, but because the debts

---

**6.** Because Defendants seek only a set-off and not an affirmative counterclaim, we need not decide whether the language permitting coun-

terclaims actually allows Defendants to assert a claim for affirmative relief.

to be set off were not "mutual" and thus did not meet the statutory requirement. *See Holz v. H.C. Baldwin,* 140 F.Supp. 860 (S.D.Ind.1956). In addition, the court's interpretation of what it believed to be New York law is irreconcilable with the subsequent New York state court decision in *Schenck v. Coordinated Coverage Corp.,* 50 A.D.2d 50, 376 N.Y.S.2d 131 (1975).[7] For these reasons, we respectfully decline to consider ourselves bound by the *Thacher* decision.

## 2. *The set-off requirements*

■ The Insurance Code states that "mutual debts ... between the company and another person ... shall be set off or counterclaimed and the balance only shall be allowed or paid." Ill.Rev.Stat. ch. 73, § 818 (1983). The concept of "mutuality" refers to the idea that:

claims owed by or to the bankrupt prior to bankruptcy cannot be set off against claims owed by or to the bankrupt's estate (as represented by the receiver or trustee) and arising after bankruptcy. This is because the element of mutuality of obligation is lacking.

4 *Collier On Bankruptcy* ¶ 68.10[1] (14th ed. 1978) (analyzing the Bankruptcy Act's similar set-off provision). Essentially this means that "pre-liquidation" debts owed by Reserve can only be set-off against "pre-liquidation" debts owed to Reserve, and similarly that "post-liquidation" debts owed by Reserve can only be set-off against "post-liquidation" debts owed to Reserve. The parties do not dispute that mutuality must exist before a set-off can be asserted; however, they disagree as to what constitutes a "pre-liquidation" rather than a "post-liquidation" debt.[8]

■ The Liquidator contends that even if Defendants' set-offs may be heard by this court, the debts owed to the Liquidator under Counts I, IV, V, VI and VIII, involving reinsurance proceeds and unearned pre-

miums as a result of the cancellation of the policies upon insolvency, may not be set off because those debts are *post*-liquidation debts while the debts owed by Reserve to Defendants are *pre*-liquidation debts. The Liquidator's position is that since the reinsurance proceeds will not be due until the policyholders' loss claims are allowed or liquidated by the liquidation court, this claim is a post-liquidation claim. Similarly, since unearned premiums do not become due until the cancellation of the policies, there was no obligation to refund those amounts before Reserve's insolvency, and these, too, are post-liquidation debts. Therefore, the Liquidator argues, mutuality does not exist as between these debts and Reserve's pre-liquidation debts, and no set-off may be permitted. Defendants argue that the debts described in Counts I, IV, V, VI, and VIII arise because of provisions in the reinsurance contracts, and that since the contracts had been executed and performed prior to the time of insolvency, the debts in question are all pre-liquidation debts. Mutuality thus exists and set-offs are permitted under the statute.

We agree with Defendants. Even if the Liquidator is correct in his assertion that the debts for reinsurance proceeds and unearned premiums were not due at the time of liquidation, that fact has no bearing on whether Defendants may use these debts for set-off purposes. "The right of set-off may be asserted in the bankruptcy proceedings even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated." 4 *Collier On Bankruptcy* ¶ 68.10[2] (14th ed. 1978). Defendants and Reserve entered into a reinsurance contract which defined all of the parties' rights and obligations. Any liability Defendants may incur to pay reinsurance proceeds or return unearned premiums or ceding commissions arises as a result of provisions in the previ-

---

**7.** We further note *Thacher* was decided twenty-five years ago, and has not been reconsidered in light of the reasoning of more recent courts and commentators.

**8.** All parties agree that the debts owed by Reserve under the contracts are pre-liquidation debts.

ously executed reinsurance agreement that require them to make these payments. In *Cunningham v. Commissioner of Banks,* 249 Mass. 401, 144 N.E. 447, 459 (1924), the court stated, "[p]rovable debts under the Bankruptcy Act include all liabilities of the bankrupt founded on contract express or implied which existed at the time of the bankruptcy and either were fixed in amount or susceptible of liquidation." In this case, the reinsurance contract was in existence at the time of Reserve's insolvency. With respect to the reinsurance proceeds, all the claims giving rise to Defendants' liability were filed prior to Reserve's insolvency. Therefore, although the claims were not paid prior to Reserve's insolvency, they were susceptible of liquidation. The unearned premiums on policies still in existence on the date of insolvency became payable on that date, and the amounts were fixed. Accordingly, we find that Defendants' debts are pre-liquidation debts; therefore, mutuality of obligation exists and a set-off is permitted.

The Liquidator directs our attention to *Melco System v. Receivers of Trans-america Ins. Co.,* 268 Ala. 152, 105 So.2d 43, 53 (1958), in which the Supreme Court of Alabama held that the reinsurer incurred no debt to the reinsured until the reinsured had actually paid the losses. The court noted that it felt to allow the offset would give a preference to the reinsurer over other creditors because the reinsurer would be receiving full payment on its claim while other creditors would receive only fractional payment. 105 So.2d at 53. It is true that the reinsurer would be paid in full if a set-off is permitted, but, of course, that is the case *anytime* a set-off is permitted. The whole point of the statutory set-off section is to make clear that such actions are permissible, even though one creditor may be getting paid more than other creditors. Professor Collier explains:

> The object of the statute is to permit a statement of the account between the bankrupt and its creditors with a view to the application of the doctrine of set-off between mutual debts and credits. And it has been pointed out that while the

operation of this privilege of set-off has the effect to pay one creditor more than another, it is a provision based upon the generally recognized right of mutual debtors, which has been enacted as part of the Bankruptcy Act. Without such enactment, it could be argued that any attempt to off set mutual debts or credits between the estate and a creditor would amount to a preference ... and would, therefore, be invalid. But the Act, instead, has recognized the possible injustice which would thus result and which would, for example, compel a creditor to prove his claim in full and accept possible dividends thereon and at the same time pay in full his indebtedness to the estate.

4 *Collier on Bankruptcy* ¶ 68.02[1] (14th ed. 1978). Thus, we respectfully decline to follow the *Melco* court's reasoning in that it seems to ignore the established policy in an area of bankruptcy law quite analogous to the situation with which we are faced. Defendants' debts are pre-liquidation debts, mutuality exists, and a set-off is permissible.

## II. *Counts V and VI*

Defendants' motions request that the court dismiss Count V and, to the extent it incorporates Count V, Count VI for failure to state a claim upon which relief can be granted. The Liquidator's cross-motion seeks summary judgment on these counts. Count V alleges that in April and May 1979, the Manager of the reinsurance contracts cancelled a large number of Reserve's policies and further alleges that had the policies not been cancelled, the Manager or the Reinsurers would have been liable to him upon entry of the liquidation order for the unearned portion of premiums paid by the policyholders on such policies. In support of his argument that he is entitled to an accounting and a judgment for the amount of the unearned premiums, the Liquidator advances two arguments: (1) that the cancellations were unauthorized and wrongful; and (2) that the cancellations resulted in a voidable preference to certain policyholders.

### 1. *Authorization*

Defendants point to Article V of the 3400 reinsurance agreement and maintain that it provides the manager with express authority to cancel contracts under the agreement. The article provides, in relevant part:

> The Manager shall ... have the authority at its sole discretion, to replace at any time the policy of one Ceding Company with the policy of another by novation, reinsurance or assumption.

In light of the unambiguous language of the contract, the intent of the parties can hardly be questioned. As the court in *Gulf Insurance Co. v. Riddle*, 199 S.W.2d 1000, 1001 (Tex.Civ.App.1947) stated:

> In the absence of fraud, mutual mistake, and such matters, the policy of insurance is the contract between the parties. Courts will not undertake to make contracts for parties but will interpret and enforce those made by them. If the provisions of a policy contract are ambiguous, they will be construed in the light most favorable to the insured; if not ambiguous they will be construed and applied as agreed upon between the parties. An unequivocal agreement contained in the contract, whereby either party may cancel and end the contract, is binding between the parties and a strict compliance with the terms contained in the contract will end its binding effect.

The Liquidator's cases on this point are inapposite. The issue in each was whether an agent who cancelled a large number of the company's policies had the authority to do so. The courts held that the agent had no authority because none was granted in the agency agreement. *See Hershey v. Kennedy & Ely Insurance, Inc.*, 294 F.Supp. 554 (S.D.Fla.1967) *aff'd per curiam*, 405 F.2d 888 (5th Cir.1968); *Clay v. Independence Mutual Insurance Co.*, 359 S.W.2d 679 (Mo.1962). This case presents no question of authorization—it was expressly granted to the manager by the contract terms, and there is no allegation of fraud, duress, mistake or the like. Accordingly, we find that the cancellation of the policies was authorized.

The Liquidator argues that even if the contract provided the manager with the authority to cancel the policies, such cancellations were wrongful as a matter of common law. Again, however, the Liquidator's cases do not support his argument. For example, the court in *Hershey* found that the agent's actions constituted a "mass cancellation" in violation of *Florida* law. However, there is no indication that the actions taken by ARIB as manager of the reinsurance pool were wrongful as a matter of Illinois law. Similarly, the court in *Clay* found that "[the agent's] purported cancellations on May 12 and its transfer of the risks to Guaranty were in excess of its authority as agent of the company, and wrongful, not having been done at the request of the insureds, or at the request of Independence, but to serve the personal interests of the [agents] in preserving the goodwill of [its] policyholders. ..." 359 S.W.2d at 683. However, we do not read *Clay* as holding that the cancellations were wrongful *per se*. Rather, we read the case as finding that the agent's self-serving conduct was wrongful because it was unauthorized. Consequently, we reject the Liquidator's argument.

### 2. *Voidable Preference*

Ill.Rev.Stat. ch. 73, § 816 (1983), regarding prohibited and voidable transfers and liens, provides, in relevant part, as follows:

> (2) Any transfer of, or lien upon, any property of any company made or created within four months prior to the filing of a complaint under this article, which gives to any creditor or policyholder or enables him to obtain a greater percentage of his debt than any other creditor or policyholder in the same class, which is accepted by a creditor or policyholder having reasonable cause to believe that such a preference will occur, shall be voidable. ...

> (3) Every director, officer, employee, stockholder, member, or any other person, acting on behalf of such company, who, within two years prior to the filing of a complaint against such company un-

der this article, shall knowingly participate in the making of any transfer or the creation of any lien prohibited by subsection (1) and every person receiving any property of, or cash surrender from, such company or the benefit thereof, as a result of a transaction voidable under subsection (2) shall be jointly and severally liable therefor and shall be bound to account to the Director as ... Liquidator. . . .

■ On the basis of the statutory language, the Liquidator's summary judgment motion must be denied. The statute requires that the transfer must be "accepted by a ... policyholder having reasonable cause to believe that such a preference will occur." Whether the policyholders of Reserve whose policies were cancelled before liquidation had reasonable cause to believe that a preference would occur raises a genuine issue as to a material fact. We accordingly deny the Liquidator's motion.

That leaves only the question whether the Liquidator has alleged facts sufficient to state a claim under Counts V and VI. In deciding a motion to dismiss, all well-pleaded factual allegations of the complaint are taken as true, and all reasonable inferences are drawn in the plaintiff's favor. *See Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

The Liquidator alleges that the cancellation of Reserve's policies prior to liquidation allowed those policyholders to obtain a refund in full of their unearned premiums, while those policyholders whose policies were cancelled by the liquidation order will have to file a claim for their refunds as general creditors in the liquidation proceeding. The Liquidator argues that this action constitutes a voidable preference. He places liability on the Reinsurers under two separate theories. First, the Liquidator alleges that, in many cases, the Manager cancelled the Reserve policy and immediately issued the policyholder a new policy written on one of the other members of the 3400 pool. Thus, the Liquidator argues, in at least some instances, the money never left the pool at all, and all of the Reinsur-

ers, collectively, were participating in the cancellation of the policies. Secondly, at the very least, the Liquidator argues, the Reinsurers benefited from the cancellations, thus rendering them liable under subsection (3).

Defendants argue that the Liquidator cannot state a claim because there was no transfer "on account of an antecedent debt." First, the fact that policyholders paid their premiums in advance does not mean that the insurance company became "indebted" to the policyholder for the unearned amount. Furthermore, the refund of the unearned premiums upon cancellation of the policies was contemporaneous with the policyholder's releasing Reserve from any liability. Therefore, the transfer did not "enable [any policyholder] to obtain a greater percentage of his debt than any other ... policyholder" because Reserve had no "debt" with respect to the policyholders. In addition, Defendants argue that even if this action does constitute a preference, it was the ARIB who cancelled the policies, not the Reinsurers and not Montgomery or Petroleum, who became managers subsequent to Reserve's insolvency.

The arguments present a difficult case. The cancellation of the policies shortly before Reserve's insolvency had the effect of taking assets out of Reserve's estate that would otherwise have been available for the general creditors. Such action, taken with the knowledge of impending financial difficulties, is the kind of behavior that preference laws are designed to thwart and several courts have so noted. *See, e.g., Hershey v. Kennedy & Ely Insurance, Inc.*, 294 F.Supp. 554 (S.D.Fla.1967), *aff'd per curiam*, 405 F.2d 888 (5th Cir.1968); *Clay v. Independence Mutual Insurance Co.*, 359 S.W.2d 679 (Mo.1962); *Bohlinger v. Ward & Co.*, 20 N.J. 331, 120 A.2d 1 (1956).

■ Nevertheless, none of the above-cited cases interpreted the Insurance Code's preference section, the provision now before us, and the provision under which our decision is limited. The statute requires

that the transfer of the company's property, made within four months of the filing of the complaint, enable a policyholder to obtain "a greater percentage of his *debt* than any other creditor or policyholder in the same class. ..." The language clearly implies that a *past* debt must exist, which is reduced when the unearned premium is transferred to the policyholder. We simply do not see how this transaction can be construed as payment of a past debt owed to the policyholder. If any debt arises at all, it arises when the policy is cancelled. If, at that time, the portion of unearned premium is returned to the policyholder, that is a *contemporaneous* transfer—the policyholder cancelled the policy and released Reserve from any further liability, and Reserve paid over the money it had collected in advance *but did not earn* because of the early cancellation—not a transfer on account of an antecedent debt. Therefore, although Defendants clearly took advantage of their opportunity to protect themselves in the face of Reserve's insolvency, this transfer simply does not come within the statutory preference section, and is not voidable by the Liquidator. Thus, Defendants' motion to dismiss Counts V and VI is granted.

### Conclusion

For all the reasons stated above, Defendants' motions for partial summary judgment are granted. The Liquidator's cross-motion for partial summary judgment is denied.