M. Diane KOKEN, Insurance Commissioner, Commonwealth of Pennsylvania, Plaintiff,

v.

LEGION INSURANCE COMPANY, Defendant.

Commonwealth Court of Pennsylvania.

Decided Aug. 27, 2004.

Ordered Published Jan. 25, 2005.

Gaetan J. Alfano, Gregg W. Mackuse, Tamara L. Traynor and Daniel J. McGravey, Philadelphia–Attorneys for M. Diane Koken, Insurance Comm. of the Comm. of PA, in her official capacity as Statutory Liquidator for Legion Insurance Company (In Liquidation).

Kenneth E. Aaron and Michael P. Brundage, Philadelphia, for intervenor, Bank of America, National Association.

## OPINION AND ORDER

LEAVITT, J.

Re: Emergency Application for Relief from Stay—Bank of America, N.A.

Bank of America, N.A., as successor to NationsBank, N.A., (Bank) has applied for relief from the stay of litigation against Legion Insurance Company (In Liquidation) (Legion). This particular stay[1] went into effect on July 25, 2003, when this Court terminated the rehabilitation of Legion and ordered the insurer to be liquidated. Article V of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 211–221.63, (Article V) provides for the liquidation of insolvent insurers. Section

---

1. This Court first ordered a stay of litigation against Legion and Legion policyholders on March 28, 2002, when it placed Legion into rehabilitation.

526(a) of Article V,[2] provides, in relevant part, that:

> Upon issuance of an order appointing the commissioner liquidator of a domestic insurer ... *no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere*, nor shall any such existing actions be continued after issuance of such order.

40 P.S. § 221.26(a) (emphasis added). The Bank seeks relief from this statutory stay[3] so that it may pursue a counterclaim against Legion in an action pending in the State of Florida.[4] Legion initiated this lawsuit on November 9, 1999, seeking damages for injuries resulting from the Bank's breach of fiduciary duty and unlawful use of Legion funds. The Bank has counter-claimed, seeking to be made whole for overdrafts that benefited Legion. Both the complaint and counter-claim were filed in the Florida court prior to Legion being placed into receivership.

The controversy, based upon the pleadings, can be described as follows. Scott Wetzel Services, Inc. (Wetzel Services), a Washington-domiciled corporation doing business in Florida, adjudicated claims on behalf of several insurance companies, one of which was Legion. Wetzel Services made claim payments on behalf of Legion policyholders by using eighty "zero accounts" that were funded by "Scott Wetzel, Inc., ITF Legion Insurance Master Account" (Master Account). The Master Account was, in turn, funded by a Legion account in Milwaukee into which Legion made the requisite deposits. In addition, Wetzel Services maintained an account at the Bank for its own business operating needs.

As early as 1995, Legion noted that the amounts it placed into the Milwaukee account had exceeded the amount of Legion claim payments made by Wetzel Services. As a result, Legion required Wetzel Services to return these funds to the Milwaukee account.[5] Legion asserts that Wetzel Services did so by moving funds in the Master Account to the Wetzel Services' operating account before making deposits to Legion's Milwaukee account. Additionally, Wetzel Services wrote overdraft checks against its operating account, which established a debt to the Bank; the Bank asserts it is entitled to collect this debt in accordance with Florida law.[6] Stated oth-

---

2. Section 526 of Article V was added by the Act of December 14, 1977, P.L. 280, 40 P.S. § 221.26(a) (emphasis added).

3. Unlike the stay established in Section 526, a stay of litigation entered in a rehabilitation is discretionary. *See* Section 517 of Article V, 40 P.S. § 221.17.

4. *Legion Insurance Company v. Bank of America, N.A. d/b/a Nationsbank, N.A.*, No. 99–7945, (13th Judicial District, Hillsborough County, Florida).

5. These facts are also drawn from a related application filed in this Court on August 3, 2004, by the Trustee in Bankruptcy for Wetzel Services, Petition of Larry S. Hyman, as Chapter 7 Bankruptcy Trustee for Scott Wetzel Services, inc., to Intervene in Liquidation Proceedings and for Relief from Stay, and the attachments thereto. The issues presented in the Trustee's petition involve the disposition of funds from the Master Account "to or for the benefit of Legion prior to the Debtor's filing of its bankruptcy petition." Petition of Larry S. Hyman, ¶ 6. Exhibit B, the Order on Cross Motions for Summary Judgment, entered by the United States Bankruptcy Court, Middle District of Florida, Tampa Division, details the financial transactions among the parties, Legion, Wetzel Services and the Bank, as determined by the Bankruptcy Court.

6. These facts are alleged in the pleadings attached to the Bank's Motion for Emergency Relief From the Stay of Litigation. *See* Exhibit A, Amended Complaint, ¶¶ 26–28; Exhibit B, Answer and Affirmative Defenses to Amended Complaint, ¶ 34; Exhibit C, Counterclaim, ¶¶ 7 and 10.

erwise, the Bank believes that it can draw on any account, even the Master Account, to cover these overdrafts.

In October 1998, Wetzel Services filed a Chapter 11 bankruptcy that was converted to a Chapter 7 proceeding in December 1998. In April 1999, Legion filed a proof of claim in the Wetzel Services' bankruptcy proceeding in the amount of $6,023,926.[7] On November 9, 1999, Legion initiated its lawsuit to recover funds retained by the Bank to cover the Wetzel overdrafts and other debts. On October 23, 2000, the Trustee for the Debtor in Bankruptcy (Trustee) filed an adversary proceeding against Legion in the Bankruptcy Court to recover funds paid to or on behalf of Legion by Wetzel Services within the federal statutory look-back period for voidable transfers.[8]

On January 14, 2000, the Bank filed an answer with affirmative defenses and a counterclaim to Legion's complaint. The Bank asserts, *inter alia,* that overdrafts in the aggregate amount of $1,054,312.55 (Overdraft) were used to pay claims on behalf of Legion policyholders.[9] The Bank asserts that the Overdraft is a debt created by Wetzel Services as agent for Legion for which Legion is responsible. The Bank seeks relief under a theory of quasi-contract, contending that it would be inequitable to allow Legion to retain the benefit conferred upon it without payment. On June 12, 2000, Legion answered the counterclaim denying the Bank's allegations.

On March 28, 2002, Legion was placed into rehabilitation by order of this Court; that order, *inter alia,* stayed litigation against Legion. The Trustee's adversary proceeding was stayed pursuant to the Bankruptcy Court on May 3, 2003, which gave full faith and credit to this Court's stay order. On July 25, 2003, this Court ordered Legion to be liquidated, which triggered the statutory stay of all litigation by or against Legion set forth in Section 526(a) of Article V, 40 P.S. § 221.26(a). The Statutory Liquidator of Legion (Liquidator) has decided to continue to prosecute its claim against the Bank in Florida.[10] The Bank requested the Liquidator to allow the Bank to proceed with its counterclaim in the Florida court at the same time it defends against Legion's action for damages. The Liquidator refused. The Bank then petitioned this Court to grant relief from the Section 526 stay so that it may pursue its counterclaim against Legion in Florida.

The Liquidator asserts that the Bank's counterclaim must be adjudicated in the ongoing liquidation proceeding in Pennsylvania. It contends that Article V provides one means for establishing the liabilities of an insurer in liquidation: the proof of claims process. The Liquidator argues that it is well-settled that a defendant may not pursue a counterclaim against an insurer in liquidation even though the statutory liquidator may file or continue litigation against that defendant. In support, the Liquidator directs this Court's attention to cases from several jurisdictions. *See Maleski v. Landberg,* No. 93 Civ. 5318, 1995 WL 10838 (S.D.N.Y. Jan 12, 1995)[11]

---

7. *See supra* n. 4. Petition of Larry S. Hyman, ¶¶ 2, 4 and 5.

8. *See supra* n. 4. Petition of Larry S. Hyman, ¶ 6.

9. Motion of Bank of America, N.A., for Emergency Relief. Exhibit C, Counterclaim, ¶ 7.

10. *See* Section 523(12) of Article V, 40 P.S. § 221.23(12), which is discussed *infra.*

11. *Maleski* is a single judge memorandum opinion and order, issued by the United States District Court for the Southern District of New York. This Court's single judge memorandum opinions may not be cited in this Court or in other courts. *See* 210 Pa.Code

(holding that defendant's counterclaim against the Statutory Liquidator of a Pennsylvania insolvent insurer in liquidation was barred because counterclaims against that insurer had to be adjudicated in the Pennsylvania liquidation proceeding); *Bard v. Charles R. Myers Insurance Agency,* 839 S.W.2d 791 (Tex.1992) (holding that Vermont court order enjoining actions against insolvent insurer barred defendant's counterclaim against Vermont Commissioner of Banking and Insurance); *Superintendent of Insurance of State of New York v. International Equipment Leasing, Inc.,* 247 N.J.Super. 119, 588 A.2d 883 (1991) (claims asserted by insured against out-of-state liquidator of insolvent insurer could not be brought in a state other than the state in which liquidation proceedings were instituted).

■ In response, the Bank explains that if it prevails in its counterclaim, it will then file a proof of claim with the Legion estate. The Bank's only object at this time is to establish whether Legion has liability to it. It is more efficient to determine this liability by way of a counterclaim in the Florida proceeding; indeed, the Bank asserts it will be inefficient to require two different tribunals to take evidence and make factual findings on the same series of transactions. The Bank notes that it is routine for bankruptcy courts to grant relief from the automatic stay established in the Bankruptcy Code for this purpose. The Bank recognizes, unequivocally, that the Florida court cannot order Legion to make payment to the Bank.

The Bank's request for relief from the statutory stay requires a review of the applicable provisions of Article V. As noted, Section 526 forbids the commencement or continuation of any lawsuit by or against the insurer in liquidation after the entry of the liquidation order. Several exceptions from this directive have been established for the liquidator. For example, with the permission of this Court, the liquidator may intervene in a civil action pending outside the Commonwealth where necessary to protect the insurer's estate. Section 526(a) of Article V, 40 P.S. § 221.26(a).[12] Further, the liquidator is given a two-year respite from any statute of limitations that would otherwise bar the liquidator's institution of an action on behalf of the estate. Section 526(b) of Article V, 40 P.S. § 221.26(b).[13] The liquidator is given the express power

---

§ 67.55. Whether 210 Pa.Code § 67.55 precludes citation to *Maleski,* which citation is governed by the District Court's operating procedures, need not be decided here because *Maleski* relied upon *Schenck v. Coordinated Coverage Corporation,* 50 A.D.2d 50, 376 N.Y.S.2d 131 (N.Y.App.Div.1975) and *Superintendent of Insurance of State of New York v. International Equipment Leasing, Inc.,* 247 N.J.Super. 119, 588 A.2d 883 (1991). These cases are reported and may be cited for their persuasive value in this Court.

**12.** This section provides as follows:
(a) Upon issuance of an order appointing the commissioner liquidator of a domestic insurer or of an alien insurer domiciled in this Commonwealth, no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere, nor shall any such existing actions be continued after issuance of such order. *Whenever in the liquidator's judgment, protection of the estate of the insurer necessitates intervention in an action against the insurer that is pending outside this Commonwealth, with approval of the court he may intervene in the action.* The liquidator may defend any action in which he intervenes under this section at the expense of the estate of the insurer.
40 P.S. § 221.26(b) (emphasis added).

**13.** It states in relevant part:

The liquidator may, upon or after an order for liquidation, within two years or such additional time as applicable law may permit, institute an action or proceeding on behalf of the estate of the insurer upon any

[t]o continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further.

Section 523(12) of Article V, 40 P.S. § 221.23(12).

The legislature has also laid down rules for jurisdiction and venue. Section 504(b) of Article V [14] establishes that an action brought by a "receiver of a domestic insurer" against a person "obligated to the insurer in any way as an incident to any agency" may be filed in any state court with jurisdiction over the person served. The statute goes on to provide as follows:

(c) *If the court on motion of any party finds that any action should as a matter of substantial justice be tried in a forum outside this Commonwealth,* the court may enter an appropriate order to stay further proceedings on the action in this Commonwealth.

(d) All action herein authorized shall be brought in the Commonwealth Court of the Commonwealth of Pennsylvania.

Section 504(c) and (d) of Article V, 40 P.S. § 221.4(c) and (d) (emphasis added).

These provisions of Article V, all relating to post-liquidation, are *in pari materia* and must be read together to give effect to all, as they apply here.[15] It is clear that the Liquidator may prosecute claims on behalf of the Legion estate. Generally, these claims will be filed in this Court, but they may be prosecuted "in this Commonwealth or elsewhere." Section 523(12) of Article V, 40 P.S. § 221.23(12). Assuming the Liquidator's action against the Bank is "incident" to an agency arrangement between Wetzel Services and Legion, the Liquidator could have brought suit in any Pennsylvania court with jurisdiction over the Bank Section 504(c) of Article V, 40 P.S. § 221.4(c). However, the Liquidator chose to continue the action in Florida, where it was instituted by Legion before it was placed into rehabilitation by this Court. This choice of the Liquidator was expressly authorized by Section 523(12) of

cause of action against which the period of limitation fixed by applicable law has not expired at the time of the filing of the petition upon which such order is entered. 40 P.S. § 221.26(a).

**14.** It states in full as follows:

(b) In addition to other grounds for jurisdiction provided by the law of this Commonwealth, *a court of this Commonwealth having jurisdiction of the subject matter has jurisdiction over a person served pursuant to the Pennsylvania Rules of Civil Procedure* or other applicable provisions of law in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this Commonwealth (i) *if the person served is obligated to the insurer in any way as an incident to any agency* or brokerage arrangement that may exist or has existed between the insurer and the agent or broker, in any action on or incident to the obligation; or (ii) if the person served is a

reinsurer who has at any time written a policy of reinsurance for an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, or is an agent or broker of or for the reinsurer, in any action on or incident to the insurance contract; or (iii) if the person served is or has been an officer, manager, trustee, organizer, promoter or person in a position of comparable authority or influence in an insurer against which a rehabilitation or liquidation order is in effect when the action is commenced, in any action resulting from the relationship with the insurer.
40 P.S. § 221.4(b) (emphasis added).

**15.** The Statutory Construction Act of 1972 provides that "the General Assembly intends the entire statute to be effective and certain." 1 Pa.C.S. § 1922(2). It also provides that "[s]tatutes *in pari materia* shall be construed together, if possible." 1 Pa.C.S. § 1932(b).

Article V, 40 P.S. § 221.23(12). The Bank cannot claim the right of removal under Section 504(c) because there is no ongoing proceeding in Pennsylvania that has been brought by the Liquidator against the Bank. 40 P.S. § 221.4(c). Even were this provision to apply here, the Bank does not argue that its counterclaim should be tried in Florida as a matter of "substantial justice" but only for the sake of judicial economy.

We are mindful also of the stark difference between the stay of litigation against Legion established in Section 526 and the stay of litigation against debtors found in the Bankruptcy Code at 11 U.S.C. § 362. In addition to enumerating specific exceptions to the automatic stay, the Bankruptcy Code gives the court authority to grant relief from the stay by "terminating, annulling, modifying, or conditioning such stay" for cause. 11 U.S.C. § 362(d). One recognized cause is to permit an action to proceed to completion in another tribunal. Article V does not confer comparable express authority upon this Court to modify a Section 526 stay to allow a counterclaim against an insurer in liquidation.[16]

Article V is based upon the National Association of Insurance Commissioner's Model Supervision, Rehabilitation and Liquidation Act. The Model Act's stay, on which Section 526 is based, has been interpreted to mean that a defendant may not pursue a counterclaim outside the proof of

claim process because it would create a preference over similarly situated creditors standing in line in the liquidation proceeding.[17] *G.C. Murphy v. Reserve Insurance Company*, 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111 (1981); *Superintendent of Insurance of the State of New York v. International Equipment Leasing, Inc.*, 247 N.J.Super. 119, 588 A.2d 883 (1991). This analysis has been employed, as noted, in numerous jurisdictions; these jurisdictions include Pennsylvania.

In *Commonwealth, ex rel. Sheppard v. Central Penn National Bank*, 31 Pa. Cmwlth. 190, 375 A.2d 874 (1977), the Statutory Liquidator of Gateway Insurance Company (Gateway Liquidator) initiated an action to recover monies held in various accounts maintained with Central Penn National Bank. The bank asserted a counterclaim on the basis of a suretyship agreement that gave the bank a lien upon all of Gateway's monies, balances and other property in the bank's possession. The Gateway Liquidator challenged the bank's right to assert a counterclaim in view of the language now found in the statute providing that

> no action at law or equity shall be commenced or prosecuted nor shall any judgment be entered against nor shall any execution or attachment be issued or prosecuted against the suspended company ... or against its property, in any court of this Commonwealth...." [18]

---

**16.** Such authority may exist by implication. However, we need not decide whether relief from the Section 526 stay can be granted in the appropriate, *i.e.*, rare, circumstance. Here, the Bank asserts a reason for a counterclaim that cannot be distinguished from that of any defendant in a suit brought by a liquidator. Florida law requires, in some cases, that a claim be presented by counterclaim or it is lost. Whether the Bank's counterclaim in Florida was directory or mandatory, however, is of no moment, as the parties themselves acknowledged at oral argument. The

Florida trial court has the authority to sever counterclaims from the case in chief.

**17.** Other states give effect to Section 526 because their version of Article V requires that all actions against an insurer in liquidation in a "reciprocal state" be addressed pursuant to the out-of-state liquidation proceeding.

**18.** This language was found in former Section 502 of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, 40 P.S. § 202, *repealed* December 14, 1977, P.L. 280.

*Id.* at 877. This Court determined that the intent of this language was "to freeze the rights of creditors and policyholders and to prevent prejudicial preferences." *Id.* at 877–878. Because a counterclaim is to be regarded as a separate action, a counterclaim was found to be an "action at law or equity ... the commencement or prosecution of which" was prohibited by the act. This Court held that any other interpretation would allow a defendant to do indirectly what it cannot do directly.

■ Here, the Bank asserts that the prosecution of Legion's lawsuit, the Bank's defense and the Bank's counterclaim all arise from the same factual scenario. It contends that in the interest of judicial economy, all the issues should be ad-

dressed at one time and in the Florida proceeding. That may be the most efficient disposition of the dispute between Legion and the Bank. However, judicial economy is not a basis stated in Article V for allowing the Bank's counterclaim to go forward in the Florida state court.[19] Section 526 prohibits the assertion of any counterclaims in actions brought or continued by the Liquidator.[20] In accord with our holding in *Sheppard v. Central Penn National Bank,* this Court holds that the Bank may not assert or litigate in the Florida litigation, in part or in whole, any of the counterclaims included in its pleading. The Bank can, of course, assert any available defenses to show that it was legally entitled to the funds in dispute.

It has been replaced with Section 526 of Article V, 40 P.S. § 221.26. Section 526 controls the powers of the statutory liquidator regarding actions by and against the insolvent insurer in greater specificity than the earlier statute. The language prohibiting the assertion of counterclaims, however, is substantively unchanged. Section 526 provides that "upon issuance of an order [of liquidation] ... no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere, nor shall any such existing actions be continued after issuance of such order." 40 P.S. § 221.26.

19. As noted by the Liquidator, the proceeding in Florida can be used in any number of ways to expedite resolution of the dispute in the Legion proof of claim process. One possibility is that the evidence, as developed in Florida, will lead the Liquidator to the conclusion that the Bank claim in the amount of $1,054,312.55 should be valued at that exact amount. In short, it is not a foregone conclusion that litigation of the Bank's counterclaim is the only way the Bank can establish the amount it believes it is owed by the Legion estate. It is not even clear what priority of claim it holds. It may be, although it cannot be known in the absence of any record, that its claim should be treated as a policyholder claim assuming, *arguendo,* the overdraft was for the benefit of Legion policyholders. Generally, of course, the claim of a bank is the claim of a general creditor.

20. The Liquidator did not formally intervene in the Florida litigation, but the Liquidator is not required to substitute herself for the insurer or intervene in the action, but could continue to prosecute the action in the name of the insurer, notwithstanding the language of Section 526 of Article V, 40 P.S. § 221.26. Section 520 of Article V, 40 P.S. § 221.20(c), vests the liquidator with "the title to all of the property, contracts and rights of action" of the liquidated insurance company; and Section 523(12) of Article V, 40 P.S. § 221.23(12), gives the liquidator the power "[t]o continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further." Section 523 does not require a liquidator to substitute herself for the insurance company or to intervene in the action, but allows her "to continue to prosecute [the action] ... in the name of the insurer." *Id.* Therefore, the Liquidator can continue the suit in the name of Legion or in the name of the Insurance Commissioner as Statutory Liquidator. Here the suit has been continued in the name of Legion. *Rockwood Insurance Company v. Motor Coils Manufacturing Co.,* 166 Pa.Cmwlth. 495, 646 A.2d 705 (1994).

Accordingly, the Bank's motion for relief from stay is denied.

### ORDER

AND NOW, this 27th day of August, 2004, upon consideration of the application of Bank of America, N.A. for relief from the stay of litigation against Legion Insurance Company (In Liquidation), the application is hereby DENIED.