**M. Diane KOKEN, Insurance Commissioner, Commonwealth of Pennsylvania, Plaintiff**

**v.**

**LEGION INSURANCE COMPANY, Defendant.**

Commonwealth Court of Pennsylvania.

Heard Nov. 17, 2005.

Decided March 3, 2006.

Publication Ordered May 22, 2006.

Gaetan J. Alfano, Gregg W. Mackuse, Tamara L. Traynor, Daniel J. McGravey, Philadelphia, for plaintiff.

Kenneth E. Aaron and Michael P. Brundage, Philadelphia, for intervenor, Bank of America, N.A.

Re: Liquidator's Application for Order Against Bank of America, N.A., To Prevent Assertion of Impermissible Affirmative Defenses

OPINION BY Judge LEAVITT.

The Statutory Liquidator of Legion Insurance Company (In Liquidation) requests this Court to order Bank of America, N.A. (Bank) not to assert the doctrines of setoff and recoupment as defenses in a tort action initiated by Legion in the Circuit Court of Hillsborough County in Florida.[1] Legion filed this suit in 1999 to recover damages suffered as a result of the Bank's alleged breach of fiduciary duty. The Bank counterclaimed in quasi-contract, seeking recovery from Legion for overdrafts that allegedly benefited Legion. Before the case was tried, Legion was placed into receivership, which stayed litigation against Legion and the Liquidator. It is this stay, the Liquidator contends, that prevents the Bank from pursuing its quasi-contract claim, even as a defense, in the Florida litigation. In response, the Bank contends that the overdrafts it made reduced Legion's actual damages and should, therefore, reduce the amount that Legion can recover from the Bank.

It has already been decided by this Court that the Bank may not pursue its quasi-contract claim as a counterclaim against Legion in the Florida litigation. *Koken v. Legion Insurance Co.*, 865 A.2d 1, 7 (Pa.Cmwlth.2005)*(Bank of America*

1. *Legion Insurance Co. v. Bank of America, N.A. d/b/a Nationsbank, N.A.*, No. 99–7945, (13th Judicial District, Hillsborough County, Florida) (*Legion (Florida)*).

*I).*[2] It has also been decided that the Bank may raise affirmative defenses in the Florida matter. *Id.*[3] The question is whether the Bank can use setoff and recoupment to pursue its quasi-contract claim as an affirmative defense without violating Pennsylvania's insurance insolvency law, Article V of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, added by Section 2 of Act of December 14, 1977, P.L. 280, *as amended*, 40 P.S. §§ 221.1–221.63 (Article V).

## BACKGROUND

The Florida action arises from a business relationship between Legion and Scott Wetzel Services, Inc., a third party administrator that adjudicated and paid policyholder claims for Legion and for other insurance companies. Wetzel Services set up accounts at Barnett Bank, N.A., the Bank's corporate predecessor, for the payment of policyholder claims. The particulars of the business relationship between Legion and Wetzel Services have yet to be decided in a trial; its outlines are known from pleadings in the Florida Circuit Court and from petitions and answers filed in this insolvency proceeding. An abbreviated history of the Florida litigation is recited here only to frame the legal questions raised by the Liquidator's Applica-

tion and not to usurp the factfinding responsibility of the Florida Circuit Court.[4]

Wetzel Services used "zero accounts" to cut checks needed to pay policyholder claims; zero accounts were used for that purpose alone. An account titled "Scott Wetzel Services, Inc., ITF Legion Insurance Master Account" (Master Account) provided the monies for the Legion zero accounts.[5] Legion was not a depositor with the Bank, and it did not have signatory authority over the Master Account. Wetzel Services drew on a Legion account held in a Milwaukee bank to put funds into the Master Account when needed. Although the Master Account was established for the sole purpose of putting monies into the zero accounts for policyholder claim payments, the Master Account was drawn down by Wetzel Services for other purposes.

The Bank maintains that checks in the amount of $1,054,312.55 were issued from the Legion zero account to pay Legion policyholder claims, without sufficient funds available in the Master Account to cover them. The Liquidator responds that these zero account overdrafts are a debt owed to the Bank by Wetzel Services and not by Legion. Legion had placed funds into the Master Account sufficient to cover its claim payments, and had the Bank established appropriate controls, the improp-

2. This Court held as follows:

[T]he Bank may not assert or litigate in the Florida litigation, in part or in whole, any of the counterclaims included in its pleading. The Bank can, of course, assert any available defenses to show that it was legally entitled to the funds in dispute.

*Bank of America I*, 865 A.2d at 7.

3. After this Court's decision in *Bank of America I*, the Bank sought leave of the Florida court to amend its affirmative defenses to add recoupment to the defense of setoff which the Bank had already asserted. The Florida court granted the Bank's motion to amend,

without prejudice to the rights of either party to seek an order from the Pennsylvania Commonwealth Court in the Legion Insurance Company liquidation proceeding regarding the effect, if any, of the liquidation proceeding or the previous Memorandum Opinion and Order ... entered on August 27, 2004 on [the Bank's] affirmative defenses of setoff and recoupment.

*Legion (Florida)*, slip op. at 2.

4. A more complete history was set forth in *Bank of America I*.

5. It is agreed by all parties that the term "ITF" means "in trust for."

er transfer of funds out of the Master Account would have never occurred. After Wetzel Services filed for bankruptcy on October 21, 1998, the Bank filed a proof of claim for approximately $4 million in the bankruptcy proceeding. The U.S. Bankruptcy Court approved a compromise that allowed the Bank to take funds from certain depository accounts to settle part of its claim against the estate of Wetzel Services.[6] Legion objected to the compromise. Legion filed a proof of claim for approximately $6 million against Wetzel Services for funds misappropriated from the Master Account. It also initiated its tort claim against the Bank in the Florida Circuit Court seeking to hold the Bank liable for the misappropriation of funds from the Master Account.

When Legion was ordered to be liquidated on July 25, 2003, the Florida litigation was stayed. After the Liquidator elected to pursue the litigation initiated by Legion pre-receivership, the Bank intervened in the Legion liquidation proceeding to request relief from the automatic stay provided in Section 526(a) of Article V.[7] It did so because it sought to pursue a quasi-contract claim against Legion as a counterclaim in the Florida litigation. The Bank's request was denied by this Court on August 27, 2004. The Bank then amended its answer in the Florida case to pursue its claim against Legion by using the doctrine of recoupment as an affirmative defense; it had asserted setoff as an affirmative defense from the beginning. The Liquidator responded with the above-captioned Application.

The Liquidator asserts three reasons why the Bank cannot assert setoff or recoupment defensively in these circumstances. First, the Liquidator contends that the Bank's attempt to pursue its quasi-contract claim using the doctrines of setoff and recoupment is simply a "recasting" of the action it sought to pursue as a counterclaim that was precluded by this Court's order of August 27, 2004. Second, the Liquidator contends that Article V limits the right to setoff to "mutual" debts, and the Bank cannot establish the requisite mutuality.[8] Third, the Liquidator contends that the Bank cannot assert recoupment because this theory is available only where the defendant's claim arises from the same transaction that gave rise to the plaintiff's action. Here, there were a series of transactions involving two accounts, the Master Account and the zero accounts, that gave rise to the Florida controversy.

---

6. The Bank sought to use the positive balances in some Wetzel Services' accounts to cover the overdrawn balances in other Wetzel Services' accounts. The aggregate overdrafts exceeded $4.4 million; the positive balance in other Wetzel Services' accounts totaled $3.3 million. Under the approved compromise, the Bank received an immediate payment of $500,000 in exchange for a release of balances in 55 depository accounts to the control of the Bankruptcy Trustee; the Bank reduced its unsecured claim against Wetzel Services to $3 million.

7. Section 526(a) of Article V provides, in relevant part, that:

Upon issuance of an order appointing the commissioner liquidator of a domestic in-

surers ... *no action at law or equity shall be brought by or against the insurer, whether in this Commonwealth or elsewhere,* nor shall any such existing actions be continued after issuance of such order.
40 P.S. § 221.26(a)(emphasis added).

8. The Liquidator argues that the Bank cannot establish mutuality because the debts are not between the same parties, *i.e.,* the Bank is attempting to set off debts of Wetzel Services *against damages Legion* claims against the Bank; the debts and credits do not arise from a contract between the parties, *i.e.,* the Bank attempts to use a quasi-contract claim as setoff in a tort claim; and setoff is not available on funds held in trust, such as the funds in the Master Account that were held in trust for Legion.

The Bank counters that only "actions at law or equity" are stayed by Section 526(a) of Article V. The Bank's quasi-contract claim is not an action where it is raised only as an affirmative defense. By contrast, a counterclaim has potential to provide an award over and above the damages awarded Legion.[9] Under the Bank's theory, a quasi-contract claim, while capable of standing alone as an action at law or equity, may be pursued so long as the relief sought is not a judgment but, rather, a reduction in or extinguishment of the plaintiff's damage award.

With respect to setoff, the Bank believes it can meet the requirements of mutuality.[10] It argues that setoff is expressly authorized by Section 532 of Article V[11] and that recoupment is implicitly authorized. In considering Legion's claims for damages, the Florida Circuit Court should be allowed to consider that the Bank made payment of claims on behalf of Legion.

Any other result, the Bank asserts, would be inequitable. Further, the Bank argues that this Court need not decide whether its quasi-contract claim against Legion fits the doctrines of recoupment and setoff because that is for the Florida Circuit Court to decide. The only task for this Court, the Bank argues, is to determine whether the Bank seeks to use setoff and recoupment to lessen or extinguish its liability for tort damages; if so, it must be allowed by this Court.

## RECOUPMENT AND SETOFF

■■■ An examination of the general principles of setoff and recoupment is an appropriate place to begin. Section 532(a) of Article V expressly authorizes "the set-off of mutual debts or mutual credits between the [insolvent] insurer and another person." 40 P.S. § 221.32(a).[12] Long rec-

9. The Bank directs this Court to Florida Rules of Civil Procedure which distinguish between defenses, Fla. R.C.P. No. 1.140, counterclaims and crossclaims, Fla. R.C.P. No. 1.170. The Florida rules provide that "every defense ... to a claim for relief ... shall be asserted in the responsive pleading ... [or] any ground not stated shall be deemed to be waived." Fla. R.C.P. No. 1.140(b). The rules provide that "[a] counterclaim ... may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." Fla. R.C.P. No. 1.170(c).

10. There is mutuality in capacity, the Bank asserts, because Legion's claims for breach of fiduciary duty are against the Bank, and the Bank's defenses for the overdrafts are against Legion; the claims are between the same parties. Mutuality in time is met because the claims arose prior to Legion's receivership. The Bank specifically denies that the funds at issue were held in trust, or that the Bank has been sued in a representative capacity.

11. The Bank does not explain, why, therefore, the Bank's initial request to this Court was to seek relief from the statutory stay in Section 526 of Article V, 40 P.S. § 221.26. Setoff is expressly authorized in Section 532 of Article

V, 40 P.S. § 221.32. If the Bank was entitled to setoff, it did not need to request relief from the Section 526 stay.

12. As has been explained by this Court, Article V is based upon the model insurer insolvency statute adopted by the National Association of Insurance Commissioners (NAIC). In turn, the NAIC Model Act was modeled on the Bankruptcy Act of 1898, *as amended,* and not the later Bankruptcy Code. *Koken v. Legion Insurance Co., (G.E.Frankona),* 865 A.2d 945, 956 n. 23 (Pa.Cmwlth.2005). As also explained in *G.E. Frankona,* 865 A.2d at 955 n. 23, the 14th edition of Collier on Bankruptcy, which is based upon the Bankruptcy Act of 1938, is the relevant treatise.

With respect to setoff, Section 68(a) of the Bankruptcy Act of 1898, *as amended,* 11 U.S.C. § 108, provided as follows:
In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set-off against the other, and the balance only shall be allowed or paid.
This provision is essentially the same in its reenacted form:
(a) Except as otherwise provided in this section and in sections 362 and 363 of this

ognized in bankruptcy, "[t]he right to set-off ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995) (quotation omitted). Stated otherwise, setoff governs the settlement of debts that existed pre-insolvency. The doctrine of recoupment, on the other hand, is not limited to debts arising prior to the liquidation. Also in contrast to setoff, recoupment arises from the *same transaction* as the plaintiff's cause of action and is invoked strictly for the purpose of reducing the plaintiff's claim. 4 COLLIER ON BANKRUPTCY § 68.03 at 855 (14th ed.1978). Unlike setoff, recoupment is "'essentially a defense to the debtor's claim ... rather than a mutual obligation.'" *University Medical Center v. Sullivan*, 973 F.2d 1065, 1079–80 (3d Cir.1992) (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)).

■■■ The "right to sue on a debt and the right to use the debt as an offset are not equivalent." *Long Beach Trust Co. v. Warshaw*, 264 N.Y. 331, 334, 190 N.E. 659, 660 (1934). In bankruptcy, a setoff is technically not an action, and is not, therefore, subject to the automatic stay of litigation. *Id.*[13] The same is true in insurance insolvency proceedings. Section 532(a) of Article V authorizes setoff as an express

exception to the stay of litigation established in Section 526. The setoff mutuality requirements are strictly construed because setoff is an exception to the orderly procedures for discharging claims against an insolvent debtor. *Newbery Corp. v. Fireman's Fund Insurance Co.*, 95 F.3d 1392 (9th Cir.1996). To be mutual, the preliquidation debts or credits must be "*in the same right* and between the same parties, standing in the same capacity." 4 COLLIER ON BANKRUPTCY § 68.04[2.1] at 867 (emphasis added); *G.E. Frankona*, 865 A.2d at 954.

■■■ Recoupment is nowhere mentioned in Article V. This is also the case with the Bankruptcy Code and its predecessor, the Bankruptcy Act of 1898, *as amended*, but its use has long been accepted in bankruptcy. 4 COLLIER ON BANKRUPTCY § 68.03 at 856 n. 10. The authority for recoupment is derived not from the setoff provisions of the bankruptcy statute, but, rather, "from the rule that the trustee takes the bankrupt's property subject to the equities therein." *In re Monongahela Rye Liquors, Inc.*, 141 F.2d 864, 869 (3d Cir.1944). Recoupment prevents the debtor from augmenting the estate unfairly. It is not about allowing a creditor to settle its claims in advance of other creditors; recoupment is about preventing insolvent debtors from receiving more than they are entitled to receive. *University Medical*

---

title, *this title does not affect any right of a creditor to offset a mutual debt owing by such creditor* to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. § 553(a)(emphasis added). Thus, case law under the Bankruptcy Code can be instructive on setoff, at least in some respects.

**13.** The Liquidator notes that Section 362(a)(7) of the Bankruptcy Code, 11 U.S.C.

§ 362(a)(7), makes setoff subject to the automatic stay. However, this statutory provision was not found in the Bankruptcy Act of 1898, *as amended*, on which Article V is based. Similarly, the language of 11 U.S.C. § 362(a)(7) does not appear in Article V. Finally, 11 U.S.C. § 362(a)(7) was not enacted to make the automatic stay against setoff permanent; its purpose is to allow the trustee to inventory the debtor's position before proceeding with the case. *Citizens Bank of Maryland,* 516 U.S. at 20, 116 S.Ct. 286.

*Center v. Sullivan,* 122 B.R. 919, 926 (Bankr.E.D.Pa.1990).[14]

Conventional wisdom holds that recoupment has a more expansive reach than setoff, which is limited by requirements of mutuality. *O'Connor v. Insurance Company of North America,* 622 F.Supp. 611, 615 n. 2 (N.D.Ill.1985). However, some pundits challenge the conventional wisdom. As has been observed:

> Apart from the fact that the unitary transaction test makes recoupment easier to apply than setoff, with its vexatious mutuality tests, it is not readily apparent how recoupment is more expansive than setoff. After all, setoff may apply to multiple contracts or transactions entered into over a prolonged course of dealing.

WILLIAM J. BRANUM, *Setoffs, Recoupments, and Voidable Preferences—In the Insolvency Process,* AMERICAN BAR ASSOCIATION, LAW AND PRACTICE OF INSURANCE COMPANY INSOLVENCY REVISITED 907, 944 (F.L. Semaya ed., 1989) [hereinafter BRANUM]. The "unitary transaction test" for recoupment cited by Branum requires that the controversy between the insolvent debtor and the other person arise from one integrated transaction. *Reiter v. Cooper,* 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

With respect to pleading setoff and recoupment, there is no guidance to be found in the Pennsylvania Rules of Civil Procedure. Pa. R.C.P. No. 1030 states that all affirmative defenses must be raised as new matter and lists many examples of affirmative defenses, such as res judicata and statute of limitations. Neither setoff nor recoupment is included in that list. Pa. R.C.P. No. 1031(a) provides that a counterclaim is "any cause of action ... which the defendant has against the plaintiff at the time of filing the answer." A counterclaim may demand "relief exceeding in amount or different in kind from that demanded by the plaintiff." Pa. R.C.P. No. 1031(b).[15] A defense, in contrast, defeats or diminishes the amount of the plaintiff's recovery. 6 STANDARD PENNSYLVANIA PRACTICE 2D § 29:4 (2002). Further, unlike counterclaims, which are permissive in nature, the pleading of affirmative defenses is compulsory, in that they must be timely pleaded or they are lost forever. *Id.*[16]

With these principles in mind, the specific issues presented to this Court by the

---

**14.** Collier offers a rationale for this general rule:

> Certainly in any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he or she is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to § 68.

4 COLLIER ON BANKRUPTCY § 68.03 at 856. The justification for this is that "when the creditor's claim 'arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in

bankruptcy would be inequitable.'" *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155, 157 (10th Cir.1986) (quoting *Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir. 1984)).

**15.** With respect to Section 68(a) of the Bankruptcy Act of 1938, Collier explains that

> [t]here may be many types of claims which the defendant may wish to assert, not merely to offset the plaintiff's claim, or reduce or extinguish it, but with a view to obtaining *affirmative relief* thereon. Technically speaking, the term "counterclaim" embraces the latter type and accordingly is broader than set-off or recoupment.

4 COLLIER ON BANKRUPTCY § 68.03 at 856.1 (emphasis in original).

**16.** In this respect, Pennsylvania does not differ from Florida. *See supra* note 9.

Liquidator's Application are next considered.

## LIQUIDATOR'S APPLICATION

The Liquidator filed her Application because she believes that allowing the Bank to pursue setoff and recoupment, even defensively,[17] violates the orderly procedures established in Article V for the treatment of creditor claims. However, as was held in *Bank of America I,* Section 526(a) of Article V has long been understood to bar counterclaims but not affirmative defenses. *See Sheppard v. Central Penn National Bank,* 31 Pa.Cmwlth. 190, 375 A.2d 874 (1977) (holding that Section 526(a) bars the entry of judgment on a counterclaim, even if executed upon in accordance with the proof of claim process in Article V, but does not bar the pursuit of defenses).[18] The Bank's quasi-contract claim can be pursued as a stand alone action; in that respect it is unlike an affirmative defense, such as res judicata or statute of limitations, which has no meaning except as a defense and will be lost if not raised. The question is whether the Bank can present the same facts pled in its counterclaim defensively, using setoff and recoupment, without running into an Article V impediment.

With respect to setoff, Section 532 of Article V is the operative statutory provision, and it does two things. First, it preserves the right of a creditor to assert setoff post-liquidation. Second, it limits the circumstances under which setoff may be invoked.

In preserving the right of setoff, Section 532 of Article V states as follows:

(a) *Mutual debts or mutual credits between the insurer and another person* in connection with any action or proceeding under this article shall be setoff and the balance only *shall be allowed* or paid, except as provided in subsection (b).

40 P.S. § 221.32(a) (emphasis added). The threshold question is what is meant by "mutual debts or mutual credits" that are "allowed" under Section 532. Collier refers to claims subject to setoff as being "in the same right." 4 COLLIER ON BANKRUPTCY § 68.04[2.1] at 867. The Liquidator argues that setoff does not come into play unless the mutual debts and credits have their genesis in a contract.

■ It is not a general truth, as claimed by the Bank, that in bankruptcy proceedings, tort claims may be setoff against contract claims. *See Brunswick Corp. v. Clements,* 424 F.2d 673, 675 (6th Cir.1970) (noting that "a tort claim is not automatically asserted as setoff against contract claims"). Indeed, an intentional tortfeasor is generally not able to take advantage of

---

**17.** Section 505(a) of Article V authorizes this Court to grant "orders as may be deemed necessary and proper to prevent: ... (xi) any ... threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders, or the administration of the [liquidation] proceeding." 40 P.S. § 221.5(a)(xi). If the Bank's use of setoff and recoupment is not permissible under Article V, an order under Section 505 can be issued to protect the estate of Legion.

**18.** In *Sheppard,* the liquidator initiated an action to recover approximately $700,000 in various accounts held at Central Penn National Bank. The defendant bank asserted nine separate counts in its answer that it termed "setoff and counterclaims," seeking a judgment against the insolvent insurance company in the amount of over $2 million for fraudulently inducing the bank to make the $2.5 million loan. The bank sought to use the counterclaim to extinguish the Liquidator's claim for $700,000 and defer execution on the excess. This Court denied the bank's request, holding that the automatic stay "not only prohibits execution but the prosecution of any action and the entering of judgment as well." *Sheppard,* 375 A.2d at 878.

setoff; this is particularly true in the case of conversion. *See In re Windsor Communications Group, Inc.*, 79 B.R. 210, 216 (E.D.Pa.1987) (holding that a creditor was not entitled to offset its liability for willful conversion of debtor's property against money owed it by the debtor).[19] However, the rule with respect to intentional torts is not absolute. In *In re Diplomat Electric, Inc.*, 499 F.2d 342 (5th Cir.1974), a creditor was allowed to setoff its liability for defamation owed to the bankrupt debtor by the amount owed to it by the debtor. The defamation claim, however, had been reduced to judgment prior to the filing of the contract claim.[20]

 In sum, although there is precedent in bankruptcy for using setoff where one claim sounds in tort and the other in contract, that precedent has uniformly involved a factual situation where the two parties were engaged in a contractual relationship in the course of which one or both committed a tort. That essential ingredient is missing here. The parties to the Florida litigation, Legion and the Bank, were never joined by a contract, and the Bank cannot cite a single bankruptcy case where setoff has been allowed where there never was a contract existing between the creditor and the debtor.[21]

There is also no precedent from insurance company insolvency proceedings for using setoff in the way proposed by the Bank. All precedent is to the contrary, allowing setoff only between two contracting parties. In *G.E. Frankona*, 865 A.2d at 954, this Court noted that debts must arise between same persons and entities "although the debts may arise from multiple contracts." In *Koken v. Reliance Insurance Co.*, 846 A.2d 778, 782 (Pa. Cmwlth.2004), *vacated*, 891 A.2d 704 (Pa. 2005), this Court explained that "the contracts under [which] the debt arise must be between the same parties."

Third, the provisions of section 532(b) that regulate setoff point in one direction: mutual debts and credits arise from contractual relationships. Section 532(b) states, in relevant part, as follows:

(b) No setoff or counterclaim shall be allowed in favor of any person where:

\* \* \*

(3) the obligation of the person is to pay an assessment levied against the members or subscribers of the insurer, or is to pay a balance upon a subscription to the capital stock of the insurer, or is in any other way in the nature of a capital contribution; or

---

**19.** However, in *Major Appliance Company, Inc. v. Gibson Refrigerator Sales Corp.*, 254 F.2d 497 (5th Cir.1958), the defendant was permitted to assert offset contract damages against a conversion claim brought by a trustee against defendant. *See generally* Annotation, *Right to Set Off Tort and Contract Claims Against One Another Under § 68(a) of the Bankruptcy Act*, 34 A.L.R. Fed. 579 (1977).

**20.** In *New York Credit Men's Adjustment Bureau, Inc. v. Bruno–New York, Inc.*, 120 F.Supp. 495 (S.D.N.Y.1954), a creditor was not permitted to setoff its intentional tort claim against the trustee's anti-trust claim because the competing tort claims had not been reduced to judgment pre-insolvency.

However, the creditor was permitted to use setoff with respect to its contract claims against the bankrupt's tort claim. Notably, these various claims arose from contractual relationships between the bankrupt and the other person that went seriously awry.

**21.** Quasi-contract is an equitable remedy. Establishing the right to quasi-contract relief does not establish a true contract. See *Department of Environmental Resources v. Winn*, 142 Pa.Cmwlth. 375, 597 A.2d 281, 284 n. 3 (1991) for a discussion of the law of implied contracts and the equitable doctrine of *quantum meruit*.

(4) the obligation of the person is to pay premiums, whether earned or unearned, to the insurer.

40 P.S. § 221.32(b)(3)-(4).[22] These limits all speak to contractual obligations. Indeed, the business of an insurer consists of little more than a series of contractual relationships from the policyholder and agent to the reinsurer.

Finally, treatise authority on insurance insolvency law supports the conclusion that the threshold to the use of setoff is the existence of a contract between the parties, at least at some point in time, regardless of the fact that the contractual relationship later spawned not just breach of contract claims but also claims of intentional and negligent tortious conduct. As explained by Branum,

> setoff is the process by which *two contracting parties* reduce mutual debts and credits to arrive at a net balance.... *Setoff is the legal extension of the common commercial practice* known as net balance accounting. The practice enables parties engaging in numerous commercial transactions to reduce efficiently credits and debits due to each other to a net balance.

BRANUM, at 909, 932 (emphasis added). The Bank and Legion were not contracting parties; they had no commercial relationship to extend post-receivership.

In sum, Section 532 permits setoff where there has existed a contractual relationship between the insolvent insurer and the other person. As in bankruptcy, the mutuality requirements of setoff must be strictly construed because setoff is an exception to the principle that no creditor receive preferential treatment. There was no contract between the Bank and Legion, and there are no mutual debts and credits between Legion and the Bank.[23] Section 532 governs the Bank's ability to use setoff against the Legion estate, and the Bank cannot satisfy the requirement of "mutual debts and credits."[24] Accordingly, Article V precludes the Bank from using the doctrine of setoff to pursue its quasi-contract claim even defensively in the Florida litigation.

 With respect to recoupment, Article V is silent. At least one court has interpreted this silence as indicative of legislative intent not to allow recoupment in insurance insolvency proceedings. *O'Connor,* 622 F.Supp. at 615 n. 2. However, this Court held otherwise in *Kaiser v. Monitrend Investment Management, Inc.,* 672 A.2d 359 (Pa.Cmwlth.1996).

In *Monitrend,* the liquidator brought an action to recover funds from Monitrend. In accordance with the terms of a stock purchase agreement, Monitrend had issued common shares of stock to the estate of an insolvent insurer as repayment of its debt to the insurer. The liquidator cancelled the stock purchase agreement and de-

---

**22.** Section 532(b) of Article V refers to "setoff" in the alternative as "counterclaim." 40 P.S. § 221.32(b). A counterclaim is a separate action deferred until the defendant is brought into court. 6 STANDARD PENNSYLVANIA PRACTICE 2D § 29:1 (2002). "Setoff" and "counterclaim" are often used interchangeably. For another day is the question of whether a defendant who can meet the Section 532 requirements of true setoff may raise setoff as a counterclaim to an action of the liquidator.

**23.** This is not a case where the claims of Legion and the Bank had been reduced to judgment pre-receivership. *See, e.g., Diplomat Electric,* 499 F.2d 342. If not a strictly contractual relationship, the parties would at least be joined by mutual debts.

**24.** Although this analysis focuses on the absence of "mutual debts and credits" arising from a contractual relationship, this Court agrees that the Bank does not satisfy any of the mutuality requirements, including time and capacity. See *supra* note 8.

manded repayment of the loan in cash. Monitrend filed a counterclaim, asserting fraud and misrepresentation by the insurer in the negotiation of the stock purchase agreement. The liquidator sought dismissal of the counterclaim, asserting that it violated the automatic stay in Section 526 and the setoff provision in Section 532. In response, Monitrend argued that because recoupment does not seek affirmative relief, it was a permissible defense to the Liquidator's action on the promissory notes.

This Court agreed, following the bankruptcy cases that have held that silence in the Bankruptcy Act means only that the use of recoupment is not regulated, not that it is disallowed.[25] In doing so, this Court observed that recoupment was intrinsically defensive in nature, seeking only to lessen or defeat recovery by the plaintiff. Accordingly, Monitrend was permitted to raise recoupment as a defense to the liquidator's action on the promissory notes.[26]

However, recoupment is a legal doctrine with standards that cannot be met, according to the Liquidator, because her claim and the Bank's claim do not arise from the same transaction.[27] Although the "same transaction" requirement for recoupment has been given a flexible construction in some courts, a "mere logical relationship," i.e., involving " 'the same two parties ... and a similar subject matter,' " is not enough to warrant recoupment. *University Medical Center*, 973 F.2d 1065, 1081 (3d Cir.1992) (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984)). "Transaction" requires that both claims arise out of the "identical transaction," or out of a "single integrated transaction, so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* Because the funds were transferred out of the Master Account in multiple transactions, the Liquidator argues that the Bank cannot satisfy the unitary transaction requirement for recoupment. This Court agrees that it is difficult to see how recoupment can be invoked in the way suggested by the Bank.[28]

However, it is not Pennsylvania case law but Florida case law that should determine

**25.** Branum notes that

recoupment is not incompatible with a comprehensive statutory scheme which makes specific allowance for setoff, but is silent on the issue of recoupment. Properly viewed, recoupment is merely a means to enable the court to arrive at a more just and accurate assessment of liability on the main demand.

BRANUM at 944. Branum's observation here conflicts with the District Court's holding in *O'Connor* that silence in the statute indicates a lack of authorization to use recoupment in an insurer insolvency proceeding. *O'Connor v. Insurance Company of North America*, 622 F.Supp. 611 (N.D.Ill.1985).

**26.** Notably, Monitrend and the insurer were joined by a contract, and the liquidator did not dispute that the controversy arose from a unitary transaction, *i.e.*, the execution of the stock purchase agreement.

**27.** In both *Monitrend* and *Sheppard v. Central Penn National Bank*, 31 Pa.Cmwlth. 190, 375 A.2d 874 (1977), this Court permitted affirmative defenses. *Sheppard* did not do more than identify the counterclaims as "setoff." *Monitrend* spoke of setoff and recoupment, but it did so only in the context of distinguishing affirmative defenses from counterclaims.

**28.** It must be acknowledged that the "same transaction" requirement is read more liberally by the Ninth Circuit. In *Newbery Corporation*, 95 F.3d at 1403, the Court of Appeals allowed recoupment where there was found to exist "a logical relationship and intertwining of opposing claims ....", noting that its reading of "same transaction" was more generous than that of the Third Circuit in *University Medical Center*.

whether, on the merits, the Bank may use recoupment as a defense to the Liquidator's tort claim. The only question for this Court is whether recoupment is barred or regulated by Article V, and it is not. Consistent with *Monitrend*, this Court holds that the use of recoupment as an affirmative defense is neither barred nor regulated by Article V.[29]

## CONCLUSION

The Bank claims that Legion is *obligated* to cover the overdrafts in the zero accounts in accordance with its quasi-contract theory. All forms of affirmative relief are subject to the automatic stay in Section 526 of Article V. Allowing a creditor to recover amounts which it claims should have been paid to it would violate the orderly procedure provided in Article V for the discharge of claims against the estate.

Setoff is not an action, and an action on a debt is not the equivalent of setoff. *Long Beach Trust Co. v. Warshaw,* 264 N.Y. 331, 334, 190 N.E. 659, 660 (1934). To allow the Bank to shoehorn its quasi-contract claim into setoff violates the automatic stay, and it violates Section 532 of Article V, which places strict limits on the use of setoff lest a preference be created.[30] These strict limits bar the Bank's use of setoff, even defensively, in the Florida litigation.

Recoupment is not regulated by Article V.[31] As this Court observed in *Monitrend,* recoupment can only be used defensively. Because the moving party's claim will require a judgment about the transaction that gave rise to the claim, that judgment will bar relitigation in a subsequent action brought by the defendant on that same transaction. Stated otherwise, recoupment is a true affirmative defense in that it will be lost if not raised in the plaintiff's action.[32] It is difficult to see how the Bank's quasi-contract claim will be lost if not allowed to be presented in the Florida litigation, which also suggests that the Bank is not properly invoking recoupment.[33] On the other hand, to the extent the Bank seeks to present facts relevant to the amount of Legion's damages, the intro-

---

**29.** It must be noted, however, that if the Bank is successful in using recoupment to reduce Legion's damages in the Florida litigation, it will not constitute a judgment on its quasi-contract action. The Bank has filed a proof of claim in the Legion liquidation to pursue its quasi-contract claim, and that claim will be decided in this forum. This is consistent with *Sheppard,* 375 A.2d at 878, noting that the automatic stay bars the prosecution of, and entering of judgment on, an action against the estate; such claims must be decided in accordance with the proof of claim process established in Article V. *See also ABCO Industries, Inc. v. ESI, Inc.,* 270 B.R. 58 (Bankr.N.D.Texas 2001) (holding that recoupment is not a claim).

**30.** Because the "only amount owed to the insolvent debtor is the net amount over and above the creditor's setoff rights, exercising the right of setoff does not work a preference." BRANUM at 911.

**31.** In fact, none of the well known affirmative defenses, such as res judicata or statute of limitations, are regulated or prohibited by Article V. To follow the logic of *O'Connor,* 622 F.Supp. 611, would lead to the conclusion that a person sued by liquidator could not assert any affirmative defense not authorized explicitly in Article V. This would be an extreme interpretation.

**32.** Under the Federal Rules of Civil Procedure, recoupment would be considered a compulsory counterclaim because it "arises out of the transaction or occurrence that is the subject of the opposing party's claim...." Fed. R.C.P. 13(a). However, this does not mean that it cannot be used also as an affirmative defense.

**33.** Here, the Bank can pursue its quasi-contract claim in the Legion liquidation proceeding.

duction of those facts is not barred by Section 526(a) or by any provision of Article V simply because those facts also support a stand-alone action. It is the law of Florida, procedural and substantive, that must determine whether the facts sought to be introduced by the Bank establish a defense to Legion's request for damages. It is for the Florida Circuit Court to decide whether recoupment is appropriate because otherwise it would be inequitable for the Legion estate "to enjoy the benefits of [the] transaction without meeting its obligations [thereunder]." *University Medical Center,* 973 F.2d at 1081.

For these reasons, the Application of the Liquidator is granted as to setoff and denied as to recoupment.

### *ORDER*

AND NOW, this 3rd day of March, 2006, upon consideration of the Statutory Liquidator's Application for Order Against Bank of America, N.A., To Prevent Assertion of Impermissible Affirmative Defenses, and the response thereto by Bank of America, N.A., the Application is hereby GRANTED with respect to setoff, and Bank of America, N.A., is ORDERED not to assert the doctrine of setoff as an affirmative defense in *Legion Ins. Co. v. Bank of America, N.A. d/b/a Nations Bank, N.A.*, No. 99–7945 (13th Judicial District, Hillsborough Court, Florida).